# EXHIBIT A

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Daniel M. Hattis, Esq. (SBN 232141) / Paul Karl Lukacs, Esq. (SBN 197007)<br>HATTIS & LUKACS<br>11711 SE 8th Street, Suite 120<br>Bellevue, Washington 98005<br>TELEPHONE NO.: (425) 233-8650     FAX NO.: (425) 412-7171<br>ATTORNEY FOR *(Name):* Plaintiffs Ayana Stevenson and David Ambrose | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Contra Costa
STREET ADDRESS: 75 Court Street
MAILING ADDRESS: P.O. Box 911
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME: Wakefield Taylor Courthouse

CASE NAME:
Ayana Stevenson et al. v. Sirius XM Radio Inc.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: C23-00855 |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* (1)CLRA,(2)FAL,(3)UCL,(4)B&P Code 17600,(5) Breach of Implied Cov.
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 14, 2023

Daniel M. Hattis, Esq., Counsel for Plaintiff
(TYPE OR PRINT NAME)        ►      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

Electronically Filed Superior Court of CA County of Contra Costa 4/14/2023 8:00 AM By: T. Jacobsen-Rios, Deputy

1    Daniel M. Hattis (SBN 232141)
     Paul Karl Lukacs (SBN 197007)
2    HATTIS & LUKACS
     11711 SE 8th St, Ste 120
3    Bellevue, WA 98005
     Telephone: (425) 233-8650
4    Facsimile: (425) 412-7171
     Email: dan@hattislaw.com
5    Email: pkl@hattislaw.com

6    *Attorneys for Plaintiffs*
     *and the Proposed Class and Subclasses*       Per local Rule, This case is assigned to
7                                                    Judge Treat, Charles S, for all purposes.

8
              SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                   COUNTY OF CONTRA COSTA          SUMMONS ISSUED
10
                          UNLIMITED CIVIL
11

12   AYANA STEVENSON and                    Case No. C23-00855
     DAVID AMBROSE,
13   For Themselves,                        **CLASS ACTION**
     As Private Attorneys General, and
14   On Behalf Of All Others Similarly Situated,   **COMPLAINT FOR:**

15                                          **(1) VIOLATION OF CAL. CIVIL CODE
                                                § 1750 *et seq.*;**
16                              Plaintiffs,
                                            **(2) VIOLATION OF CAL. BUSINESS &
17   v.                                         PROFESSIONS CODE § 17500 *et seq.*;**

18   SIRIUS XM RADIO INC.,                  **(3) VIOLATION OF CAL. BUSINESS &
                                                PROFESSIONS CODE § 17200 *et seq.*;**
19
                               Defendant.   **(4) VIOLATION OF CAL. BUSINESS &
20                                              PROFESSIONS CODE § 17600 *et seq.*;**

21                                          **(5) BREACH OF THE IMPLIED
                                                COVENANT OF GOOD FAITH
22                                              AND FAIR DEALING (PLEADED IN
                                                THE ALTERNATIVE)**
23
                                            **JURY TRIAL DEMANDED**
24

25

26

27

28

---

CLASS ACTION COMPLAINT                                    **HATTIS & LUKACS**
                                                           11711 SE 8th St, Ste 120
                                                              Bellevue, WA 98005
                                                      T: 425.233.8650 | F: 425.412.7171
                                                              www.hattislaw.com

Plaintiffs Ayana Stevenson and David Ambrose, individually, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and investigation of their counsel, against Defendant Sirius XM Radio Inc. ("SiriusXM" or "Defendant"):

## INTRODUCTION AND SUMMARY

1. Plaintiffs Ayana Stevenson and David Ambrose bring this action under California law to challenge a deceptive pricing scheme whereby SiriusXM falsely advertises its music plans at lower prices than it actually charges. SiriusXM fails to include in its advertised prices the amount of its invented "U.S. Music Royalty Fee," which increases the *true* plan price by a whopping 21.4% above and beyond the advertised price for the plan.

2. SiriusXM intentionally does not disclose the Fee. SiriusXM even goes so far as to not mention the words "U.S. Music Royalty Fee" in **any** of its advertising, including in the fine print. SiriusXM's sole advertising disclaimer is that "Fees and taxes apply"—but in reality **zero** taxes and **zero** other fees apply, such that the undisclosed U.S. Music Royalty Fee is in fact the sole and exclusive component of "Fees and Taxes."

3. Once consumers have been lured to sign up, SiriusXM prevents them from learning about its scheme by **never** thereafter sending its customers ongoing bills or payment receipts. All the while, Sirius silently and automatically renews their subscriptions month after month.

4. Notably, **none** of SiriusXM's competitors charge any separate royalty fee above and beyond the advertised music plan price. SiriusXM knows that reasonable consumers would not expect SiriusXM to charge the U.S. Music Royalty Fee, let alone call it "Fees and Taxes."

5. Even the **name** of the U.S. Music Royalty Fee is deceptive. SiriusXM calls it a "U.S." fee to falsely indicate to consumers (i.e., to those few consumers who learn about its existence) that it is a government-related fee.

6. In the event that a subscriber happens to notice the U.S. Music Royalty Fee has been charged and then contacts SiriusXM to inquire about the Fee, SiriusXM has a policy and practice of falsely telling the subscriber that it is a government-related fee and/or that it is

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

outside of SiriusXM's control.

7.    SiriusXM's U.S. Music Royalty Fee scheme has been the source of **all** of SiriusXM's profits for the past several years. For example, in 2022, SiriusXM collected $1.36 billion in U.S. Music Royalty Fee charges, while the entire company had net profits of $1.21 billion. In other words, in 2022, U.S. Music Royalty Fee revenues were equal to 122% of the net profits for the entire company.[1]

8.    SiriusXM falsely advertised the prices of its music plans to Plaintiffs and Class members, and SiriusXM never adequately disclosed to them that the U.S. Music Royalty Fee would be charged or its true nature. Meanwhile, SiriusXM's sign-up process, automatic renewal process, and policy of not sending ongoing periodic billing notices or payment receipts are deliberately designed to prevent subscribers from learning of the U.S. Music Royalty Fee.

9.    SiriusXM automatically charges the U.S. Music Royalty Fee to nearly all of its 3.8 million California subscribers (the Fee currently accounts for over $160 million in annual charges to California subscribers alone). Since SiriusXM invented and introduced the Fee in 2009, Plaintiffs estimate that SiriusXM has unlawfully extracted over $1 billion from California consumers in U.S. Music Royalty Fee charges.

10.    Plaintiffs Ayana Stevenson and David Ambrose bring this lawsuit individually and as private attorneys general seeking public injunctive relief to protect the general public by putting an end to SiriusXM's unlawful advertising scheme. Plaintiffs also seek declaratory relief, including a declaration that SiriusXM's arbitration clause is unconscionable and/or unenforceable, and a declaration that SiriusXM's practices alleged herein are unlawful under California law. Plaintiffs also seek restitution, on behalf of themselves and on behalf of a Class and Subclasses of California SiriusXM subscribers, including disgorgement of all revenues and/or unjust enrichment SiriusXM obtained from them as a result of the unlawful conduct alleged herein. In the alternative, Plaintiffs seek damages for breach of the implied covenant of good faith and fair dealing to Plaintiffs and Class members in the amount they paid in U.S.

---

[1] In 2022, SiriusXM had subscriber revenues of $6.37 billion, 21.4% of which (i.e., $1.36 billion) were payments of the U.S. Music Royalty Fee.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  Music Royalty Fees, and in the amount of their overpayments which resulted from SiriusXM's

2  deceptive automatic renewal practices.

3        11.      To be clear, Plaintiffs are <u>not</u> seeking to regulate the existence or amount of the

4  U.S. Music Royalty Fee (although Plaintiffs contend that the <u>name</u> of the Fee is deceptive

5  because SiriusXM intentionally calls it a "U.S." fee to trick consumers into thinking it is a

6  government-related fee). Rather, Plaintiffs want SiriusXM to include the <u>amount</u> of the so-

7  called U.S. Music Royalty Fee in the music plan prices it advertises to the general public, and

8  to adequately disclose the Fee and its true nature and basis.

9  **THE PARTIES**

10        12.      Plaintiff Ayana Stevenson is a citizen and resident of the city of Hercules, in

11  Contra Costa County, California.

12        13.      Plaintiff David Ambrose is a citizen and resident of the city of Irvine, in Orange

13  County, California.

14        14.      Defendant Sirius XM Radio Inc. ("SiriusXM") is a corporation chartered under

15  the laws of Delaware, with its principal place of business in New York. The company has

16  office and studio/production facilities in Los Angeles, California. The company also has office

17  and engineering facilities in San Francisco, California.

18  **JURISDICTION AND VENUE**

19        15.      **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction over

20  this civil action in that Plaintiffs bring claims exclusively under California law, including the

21  Consumers Legal Remedies Act, California Civil Code § 1750 *et seq*.; the False Advertising

22  Law, California Business & Professions Code § 17500 *et seq*.; the Unfair Competition Law,

23  California Business & Professions Code § 17200 *et seq*.; California's Automatic Renewal Law,

24  California Business & Professions Code § 17600 *et seq*.; and breach of the implied covenant of

25  good faith and fair dealing.

26        16.      **Personal Jurisdiction**. This Court has personal jurisdiction over SiriusXM

27  pursuant to, among other bases, California Code of Civil Procedure § 410.10 because:

28  (1) SiriusXM is authorized to do business and regularly conducts business in the State of

---

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

California; (2) the claims alleged herein took place in California; and/or (3) SiriusXM has committed tortious acts within the State of California (as alleged, without limitation, throughout this Complaint).

17.     **Venue**. Venue is proper in Contra Costa County because Plaintiff Ayana Stevenson is a California citizen who resides in the city of Hercules, which is in Contra Costa County, California. Ms. Stevenson purchased SiriusXM music plans in Hercules, California for use in her automobile which she drives in and around her home in Hercules, California.

<u>**FACTUAL ALLEGATIONS OF SIRIUSXM'S**</u>
<u>**DECEPTIVE PRICING SCHEME**</u>

18.     Defendant provides SiriusXM-branded satellite radio and internet-only streaming plans to approximately 34 million consumers nationwide, including approximately 3.8 million Californians. Nearly all of the service plans offered by SiriusXM include music channels ("music plans").

19.     SiriusXM falsely advertises its music plans at lower rates than it actually charges by not disclosing, and not including in the advertised price, the amount of its invented "U.S. Music Royalty Fee," which increases the *true* plan price by a whopping 21.4% above and beyond the advertised price for the plan. SiriusXM intentionally does not disclose the extra charge. SiriusXM even goes so far as to not mention the words "U.S. Music Royalty Fee" in **<u>any</u>** of its advertising, including in the fine print. Once consumers have been lured to sign up, SiriusXM prevents them from learning about its scheme by **<u>never</u>** thereafter sending its customers ongoing bills or payment receipts. All the while, Sirius silently and automatically renews their subscriptions month after month.

20.     SiriusXM imposes the U.S. Music Royalty Fee on all subscribers of its satellite radio music plans (satellite radio subscribers comprise the overwhelming majority of SiriusXM subscribers). SiriusXM also imposes the U.S. Music Royalty Fee on most subscribers of its less

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

popular SiriusXM-branded internet-only streaming music plans.[2]

21.     The overwhelming majority of SiriusXM subscribers utilize SiriusXM's services in their automobiles. SiriusXM's satellite radios are pre-installed in 84% of the over 13 million new automobiles sold each year in the United States.[3] All of the 13 million-plus annual buyers of new vehicles are <u>automatically</u> provided a free 3 to 6 month trial of SiriusXM service.[4] SiriusXM's satellite radios are also already installed in 51% of the 36 million used automobiles sold each year.[5] Many of the buyers of these used vehicles are likewise automatically enrolled in free SiriusXM trials.

22.     SiriusXM's business model relies on converting these millions of vehicle buyers from free trial users into paid subscribers of automatically renewing music plans.

23.     This effort begins with a revenue-sharing arrangement with the leading automakers: SiriusXM pays over $1 billion a year in subsidies and revenue splits to the automakers.[6] Pursuant to this revenue sharing arrangement, automotive dealerships submit the contact information of their recent car buyers directly to SiriusXM's marketing department. The automakers and auto dealers then get a cut of the SiriusXM subscription revenue that results.

---

[2] The only streaming music plan subscribers who are not charged the U.S. Music Royalty Fee are streaming music subscribers of the SiriusXM app who are signed up and billed through the Apple App Store or Google Play Store platforms.

[3] *See* "Car Market Puts SiriusXM's 2022 Growth Plans Into The Slow Lane," InsideRadio.com, July 28, 2022, available at https://www.insideradio.com/free/car-market-puts-siriusxm-s-2022-growth-plans-into-the-slow-lane/article_c577b85c-0ea6-11ed-a4f3-6316ccfafd88.html#:~:text=Its%20receivers%20are%20now%20installed,satellite%20radio%20don't%20bother.

[4] More specifically, new cars generally come with a free trial of SiriusXM's Platinum Plan, with 165+ channels including dozens of music channels.

[5] *Id. Also see* report on used vehicle market based on data from Cox Automotive, at https://www.autonews.com/used-cars/used-car-volume-hits-lowest-mark-nearly-decade#:~:text=The%20number%20of%20used%20cars,about%2035.8%20million%20were%20sold.

[6] For example, in 2016, SiriusXM paid about $1 billion a year in subsidies and revenue splits to automakers. *See* Sisario, Ben, "SiriusXM Fights to Dominate the Dashboard of the Connected Car," New York Times, February 20, 2016 (behind pay wall at https://www.nytimes.com/2016/02/21/business/media/siriusxm-fights-to-dominate-the-dashboard-of-the-connected-car.html).

---

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

24.     After receiving the contact information of the vehicle buyers, SiriusXM proceeds to inundate them with marketing emails, direct mailers, and telemarketing calls in an attempt to get the consumers to provide their credit or debit card information to SiriusXM so that SiriusXM can sign them up for paid—and automatically renewing—music plan subscriptions.

A.     **The U.S. Music Royalty Fee.**

25.     The U.S. Music Royalty Fee is a uniform additional 21.4% charge that SiriusXM collects from SiriusXM subscribers above and beyond the advertised and quoted price of the music plan.

26.     SiriusXM invented and first added the U.S. Music Royalty Fee to its music plans in 2009, at a 13.9% flat rate charge. Since then SiriusXM has increased the Fee to the current 21.4% rate.

27.     SiriusXM's U.S. Music Royalty Fee scheme has been the source of **all** of SiriusXM's profits for the past several years. For example, in 2022, SiriusXM collected $1.36 billion in U.S. Music Royalty Fee charges, while the entire company had net profits of $1.21 billion. In other words, in 2022, U.S. Music Royalty Fee revenues were equal to 122% of the net profits for the entire company.[7]

28.     The U.S. Music Royalty Fee scheme is at the heart of SiriusXM's marketing plan. The scheme enables SiriusXM to falsely advertise its music plans for much lower rates (17.6% lower) than what SiriusXM actually charges, in order to lure as many consumers as possible into signing up for automatically renewing subscriptions and paying more than they otherwise would have paid.

29.     Meanwhile, SiriusXM is **alone** in charging such a fee. None of SiriusXM's major music streaming competitors (for example, Apple Music, Spotify, Amazon Music, Google Play Music) charge any such separate music royalty fee above and beyond the advertised music plan price. Reasonable consumers would not expect SiriusXM to charge such

---

[7] In 2022, SiriusXM had subscriber revenues of $6.37 billion, 21.4% of which (i.e., $1.36 billion) were payments of the U.S. Music Royalty Fee.

**HATTIS & LUKACS**
11711 SE 8th, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

a fee, let alone hide it as "Fees and Taxes." The U.S. Music Royalty Fee is, in fact, simply a disguised double-charge for the music plan itself.

30.     SiriusXM automatically charges the U.S. Music Royalty Fee to nearly all of its 3.8 million California subscribers (the Fee currently accounts for over $160 million in annual charges to California subscribers alone). Since SiriusXM invented and introduced the Fee in 2009, Plaintiffs estimate that SiriusXM has unlawfully extracted over $1 billion from California consumers in U.S. Music Royalty Fee charges.

**B.     SiriusXM Fails to Disclose the U.S. Music Royalty Fee in Its Advertisements.**

31.     SiriusXM advertises its satellite radio and streaming music plans through marketing directed at the consuming public in California and throughout the United States via email campaigns, direct mail campaigns, telemarketing campaigns, internet advertising, television advertising, and radio advertising. Meanwhile, the tens of millions of automobiles which are equipped with a SiriusXM satellite radio, but which do not have an active trial or a current paid subscription, will constantly prompt the consumer to subscribe to SiriusXM anytime the consumer switches the car audio system to the SiriusXM radio setting.

32.     Through all of these channels, SiriusXM consistently and prominently advertises particular flat monthly prices for its music plans, without disclosing or including the amount of the U.S. Music Royalty Fee in the advertised price.

33.     None of SiriusXM's advertisements for music plans names or mentions the existence of the U.S. Music Royalty Fee or its amount—not even in the fine print.  Likewise, none of SiriusXM's advertisements states the *true* music plan price after adding the amount of the U.S. Music Royalty Fee. And there is no asterisk adjacent to the advertised price in any of SiriusXM's advertisements or materials.

34.     SiriusXM's sole advertising disclaimer is that "Fees and taxes apply"—but in reality **zero** taxes and **zero** other fees apply, such that the undisclosed U.S. Music Royalty Fee is in fact the one and only "Fees and Taxes" that is charged. Given that the U.S. Music Royalty Fee is in fact the sole and exclusive component of "Fees and Taxes," SiriusXM has essentially

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1  relabeled the U.S. Music Royalty Fee as "Fees and Taxes"—for the sole purpose of deceiving

2  consumers.

3        35.      Meanwhile, **none** of SiriusXM's competitors charge any separate royalty fee

4  above and beyond the advertised music plan price. SiriusXM knows that reasonable consumers

5  would not expect SiriusXM to charge the U.S. Music Royalty Fee, let alone call it "Fees and

6  Taxes."

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

36.     Below is an example of a marketing direct mailer sent by SiriusXM in December 2022 to a consumer who was in a SiriusXM free trial that automatically came with a new vehicle:

**SiriusXM Promotional Mailer to Consumer in Free Trial With New Vehicle**



37.     The above mailer is a typical example of the millions of promotional mailers that SiriusXM sends to new vehicle purchasers each year. Notably, the top right of the ad

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

features "Get 12 Months for $5/Month," but makes no mention of the U.S. Music Royalty Fee

or the extra 21.4% (i.e., the extra $1.07) that the plan <u>actually</u> costs due to the Fee. There is no

asterisk next to the advertised price, and in fact nowhere in the entire mailer—not even in the

fine print at the bottom—is there any mention whatsoever of the U.S. Music Royalty Fee or its

amount. The only disclosure language in the entire mailer is the phrase "Fees and taxes apply,"

which is in small print in the circle on the left of the ad, where it also says "See Offer Details

below." But the "Offer Details" (which can be found in the fine print at the bottom of the

mailer) likewise only states the same phrase "Fees and taxes apply." It does not mention the

U.S. Music Royalty Fee by name or what the additional "Fees and taxes" are or their amounts.

The "Offer Details" fine print also mentions that the plan will renew after the 12-month

promotion "at then-current rates (currently, $17.99)"—but again does not disclose that the

<u>actual</u> rate the plan will be renewed at is 21.4% higher (at a true rate of $21.84) due to the U.S.

Music Royalty Fee.[8]

---

[8] The intentional nature of SiriusXM's misrepresentations and omissions are further evidenced by the fact that while <u>Defendant Sirius XM Radio Inc.</u> decided to totally avoid mentioning the name of the U.S. Music Royalty Fee or its amount in any of its advertising (including even in the "Offer Details" fine print, as reflected in the ads printed in this Complaint), the company's Canadian sister company, <u>Sirius XM Canada Inc.</u>, chose a different approach. Sirius XM Canada Inc., in contrast, decided to go ahead and disclose the name of the fee and its amount (which in Canada is called the "Music Royalty and Administrative Fee") in the "Offer Details" fine print of its otherwise nearly identical ads.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

38.    Below is an example of a marketing email sent by SiriusXM in February 2023 to a consumer whose free SiriusXM trial (which came with a newly purchased vehicle) elapsed:

**SiriusXM Promotional Email to Consumer Whose Vehicle Free Trial Elapsed**



39.    The above email is a typical example of the millions of emails SiriusXM sends to purchasers of new automobiles who are in an automatic free trial of SiriusXM or whose trial has already elapsed. Notably, the email states the price is "JUST $5/MO", but makes no mention of the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07) that the plan <u>actually</u> costs due to the Fee. There is no asterisk next to the advertised price, and in fact

nowhere in the entire email—not even in the fine print at the bottom—is there any mention whatsoever of the U.S. Music Royalty Fee or its amount. Nowhere in the email, even in the fine print at the bottom, is there any mention of the existence of any fees at all. There is a phrase "See Offer Details," but there is no "Offer Details" section in the email. It turns out that the white "Offer Details" text is a non-obvious hyperlink (with no hyperlink indicators). If the consumer figured out to click on the "Offer Details" text on the email, the consumer would be brought to the webpage below:



40.     This offer/disclaimer webpage features "$5/mo for 12 months," but makes no

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

mention of the U.S. Music Royalty Fee or the extra 21.4% (i.e., the extra $1.07) which the plan actually costs due to the Fee. Below the prominent text "$5/mo for 12 months," smaller text reads "Then $18.99/mo. Fees & taxes apply. See **Offer Details** below." But the fine print "Offer Details" at the bottom of the webpage states only the same phrase "Fees and Taxes apply." It does not mention the U.S. Music Royalty Fee by name or what the additional "Fees and Taxes" are or their amounts.

**C. SiriusXM Fails to Disclose the U.S. Music Royalty Fee to Consumers When They Sign Up on Its Website.**

41.    For years, SiriusXM's consumer website has advertised its music plans by prominently featuring particular flat monthly prices for the plans, without disclosing or including the amount of the U.S. Music Royalty Fee in the advertised price.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

42. For example, when this case was filed, SiriusXM's website listed the following music plans (on the "Browse Plans and Pricing" webpage).

**Music Plans Offered on the SiriusXM Website**



43. All of these options (including both the 3-month promotional $1 price, and the stated higher prices after the 3 months) are presented as having a flat rate. The prices exclude the additional 21.4% charge for the U.S. Music Royalty Fee. The prices do not have asterisks and the only disclosure language is on the left side, where smaller print says "Plus fees and taxes <u>See Offer Details Below</u>." But the "Offer Details" at the bottom of the webpage (which follows a section of "Frequently Asked Questions" that likewise makes no mention of the Fee), states only the same phrase "Fees and taxes apply." It does not mention the U.S. Music Royalty

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Fee by name or what the additional "Fees and taxes" are or their amounts.

44.     If the consumer clicks on the blue "GET" button for the respective music plan, the consumer is taken through SiriusXM's online purchase process. Each page of the purchase process features "$1 for 3 months" on the top, and smaller text stating the higher price after the 3 months (e.g., "Then 23.99/mo.").

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

45.    Below is the final page of the purchase process (the order submission page) for the Platinum music plan. This final order submission page is the only page of the entire purchase process which lists a specific additional amount for "Fees and Taxes."

46.     Under "Order Summary," SiriusXM shows a price of $1.00 for 3 months of the music plan ($0.33/mo), plus "Fees and Taxes" of $0.21. Notably, counsel's investigation showed that all SiriusXM music plans (including this one) sold in California have **$0.00** in "Taxes." And the **only** "Fee" SiriusXM ever charges in California is the undisclosed 21.4% U.S. Music Royalty Fee. (For example, the $0.21 in "Fees and Taxes" is comprised entirely of the 21.4% U.S. Music Royalty Fee; $0.21 = 21.4% of the $1.00 plan price.)

47.     SiriusXM disguises the amount of its invented and deceptive U.S. Music Royalty Fee as "Fees and Taxes." Given that the U.S. Music Royalty Fee is in fact the sole and exclusive component of "Fees and Taxes," SiriusXM has essentially relabeled the U.S. Music Royalty Fee as "Fees and Taxes"—for the sole purpose of deceiving consumers. SiriusXM knows and intends that reasonable consumers will understand and assume that the amount listed as "Fees and Taxes" is comprised of legitimate taxes and government-related fees passed on by SiriusXM to its subscribers. SiriusXM knows and intends that reasonable consumers would not expect that SiriusXM—unlike every other music streaming service—would invent and charge the so-called "U.S. Music Royalty Fee" above and beyond the advertised price for the music plan. And SiriusXM knows that consumers certainly would not expect such a charge to be labeled as "Fees and Taxes."

**D.**     **SiriusXM Fails to Disclose the U.S. Music Royalty Fee to Consumers When They Sign Up Over the Phone.**

48.     Likewise, SiriusXM sales and customer service agents have been trained for years, as a matter of company policy, to present consumers with the advertised flat monthly prices for its music plans without disclosing the U.S. Music Royalty Fee. The music plan prices that agents quote to consumers exclude the cost of the U.S. Music Royalty Fee. At most, agents may say the cost is the advertised or quoted price plus unspecified "Fees and Taxes." SiriusXM knows and intends that a reasonable consumer would interpret the phrase "Fees and Taxes" to mean only taxes or government-related fees.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**E.**   **SiriusXM Continues to Deceive Customers After They Sign Up.**

49.   SiriusXM continues to deceive customers about the true price of its music plans and about the existence and nature of the U.S. Music Royalty Fee, even after they have signed up.

50.   SiriusXM has implemented policies and practices which prevent its subscribers from noticing that they are being charged the Fee. For example, after the initial signup email, SiriusXM never thereafter sends the subscriber ongoing bills or payment receipts.

51.   In fact, the sole billing document the subscriber may ever receive which mentions the existence of the U.S. Music Royalty Fee is that initial signup email (which is sent immediately after the customer signs up), where the mention is buried toward the bottom. This signup email contains no explanation whatsoever of the Fee, even in the fine print.

52.   Meanwhile, if the customer were to log into his or her customer account dashboard on the SiriusXM website, the default view shows only the total amount due and does not list, let alone explain, the U.S. Music Royalty Fee.

53.   Even the **name** of the U.S. Music Royalty Fee is deceptive. SiriusXM calls it a "U.S." fee to falsely indicate to consumers (i.e., to those few consumers who learn about its existence) that it is a government-related fee.

**1.   In Order to Prevent Subscribers From Learning of Its Scheme, SiriusXM Signs Up Customers for Auto-Renewal by Default and Then Never Sends Customers Ongoing Bills or Receipts.**

54.   SiriusXM's automatic renewal and billing process are designed to prevent its subscribers from learning of its U.S. Music Royalty Fee scheme. SiriusXM signs up customers for automatic renewal by default (most customers have monthly plans, but SiriusXM also offers quarterly, semi-annual, and annual plans). And after the initial signup email, SiriusXM **never** thereafter emails the customer any bills—or even receipts—of the ongoing charges.

55.   In fact, most SiriusXM customers initially sign up with SiriusXM by providing their credit card for a free multi-month trial or for a multi-month greatly discounted promotional rate. SiriusXM's policy of never sending ongoing billing notices includes failing to send any notice of the pending expiration of a consumer's multi-month free trial or

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

promotional rate prior to charging that customer the higher rate—in violation of California's automatic renewal law, Business & Professions Code § 17600 *et seq.*

56.     The only evidence of the monthly (or other subscription term) charges by SiriusXM that a customer may find is on his or her bank or credit card billing statement—which only lists a dollar amount and makes no mention of the U.S. Music Royalty Fee.

57.     It is telling that while SiriusXM intentionally sends **zero** ongoing billing notices or invoices to its subscribers, SiriusXM meanwhile makes sure to inundate and benumb these same subscribers with **marketing** emails nearly every other day (totaling over a dozen each month), such that subscribers come to assume that **any** emails they receive from SiriusXM are marketing or promotional emails.

> **2.     If a Subscriber Notices and Asks About the Fee, SiriusXM Agents Falsely Say the Fee Is Government-Related or Outside of SiriusXM's Control.**

58.     In the event that a subscriber happens to notice the U.S. Music Royalty Fee has been charged and then contacts SiriusXM to inquire about the Fee, SiriusXM agents falsely tell the subscriber that the Fee is a government-related fee and/or that is outside of SiriusXM's control.

59.     For example, on March 10, 2023, SiriusXM subscriber Christopher Carovillano logged into the SiriusXM website to cancel his subscription after he learned about the existence of the U.S. Music Royalty Fee. Mr. Carovillano clicked a link to start a chat with an online customer service agent. Mr. Carovillano told the agent that he wanted to cancel his subscription and that he wanted the U.S. Music Royalty Fees he had paid to be refunded to him.

60.     The SiriusXM chat agent responded by falsely stating that the U.S. Music Royalty Fee was "government mandated." The agent told him that the Fees he had paid could not be refunded. The agent tried to prevent Mr. Carovillano from cancelling by offering him a lower promotional rate for his current music plan "plus fees and taxes," but Mr. Carovillano rejected the offer and demanded that the agent terminate his service.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

61.     Below is a screenshot of part of the online chat conversation, with a red box around the relevant portion:



62.     The chat agent's statement that the U.S. Music Royalty Fee was "government mandated" reflects SiriusXM's policy of falsely telling customers who ask about the Fee that it is a government-related fee and/or is outside of SiriusXM's control.

**PLAINTIFFS' FACTUAL ALLEGATIONS**

**Plaintiff David Ambrose**

63.     Plaintiff David Ambrose is, and at all relevant times has been, a citizen and resident of the city of Irvine, in Orange County, California.

64.     In early 2020, Mr. Ambrose purchased a new car which automatically came with a free SiriusXM "All Access" plan trial subscription (SiriusXM later renamed the All Access plan to the "Platinum" plan in July 2021).

65.     During the free trial, Mr. Ambrose received numerous promotional emails from SiriusXM encouraging him to submit his credit card information and sign up for a paid

subscription to SiriusXM. Many of the promotional emails advertised and quoted discounted promotional prices for SiriusXM plans, similar to the example email printed above at Paragraph 38. None of these promotional emails made any mention whatsoever of the U.S. Music Royalty Fee.

66. On August 5, 2020, prior to the expiration of his free trial, Mr. Ambrose viewed a promotional email from SiriusXM which offered a "Free" additional 3 months of the All Access plan if he submitted his credit card information and paid a "$2 processing fee."

67. The email directed Mr. Ambrose via a hyperlink to SiriusXM's website to sign up for the offer. There, Mr. Ambrose went through SiriusXM's online purchase process. On the webpages of the online purchase process, SiriusXM promised that he would enjoy a 3-month subscription to SiriusXM's "All Access" music plan for $0.00, plus a $2.00 processing fee. Smaller print on the web pages stated that when the 3 months concluded, he would thereafter be charged $21.99 per month for the plan. None of the webpages made any reference to the U.S. Music Royalty Fee or its amount. On one of the pages of the purchase process, SiriusXM prompted Mr. Ambrose to enter his credit card information, which he did.

68. On the final page of the purchase process (the order submission page), Mr. Ambrose viewed a webpage similar to the screenshot printed above at Paragraph 45. The webpage made no mention of the U.S. Music Royalty Fee. Under the "Order Summary" section, SiriusXM stated only that he would be charged $2.00. Further down, it stated that thereafter he would be automatically charged $21.99 per month for the plan plus unspecified "Fees and Taxes."

69. Based on these representations, Mr. Ambrose submitted his order by clicking on the "Complete My Order" button.

70. At no point was Mr. Ambrose aware that SiriusXM would bill him any additional monthly music plan charges above the $21.99 monthly rate after the 3-month promotional price ended. At no point did Mr. Ambrose view any mention of the existence of the U.S. Music Royalty Fee or its amount. Mr. Ambrose assumed that by "Fees and Taxes," SiriusXM meant legitimate taxes and government-related fees. Mr. Ambrose had no idea that

CLASS ACTION COMPLAINT

- 21 -

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

the "Fees and Taxes" amount was not actually comprised of any taxes or legitimate government-related fees whatsoever. Mr. Ambrose had no idea that in fact 100% of the purported "Fees and Taxes" amount was to pay for SiriusXM's invented U.S. Music Royalty Fee—which was just a way for SiriusXM to charge more for the music plan itself while disguising it as a government-related pass-through charge.

71.     Mr. Ambrose's "free" additional 3 months (with the $2.00 "processing fee") ended in early December 2020. SiriusXM did not send any notice of the impending expiration of the "free" promotional period prior to automatically charging him at the $21.99 rate.

72.     Each month thereafter, SiriusXM silently and automatically charged Mr. Ambrose's credit card, without giving him any email or mail notice whatsoever of the upcoming monthly charges and without ever emailing or mailing him a single monthly billing statement or receipt.

73.     Mr. Ambrose has been a continuous subscriber to the SiriusXM $21.99 Platinum music plan for over two years. (The "All Access" plan he signed up for was renamed the "Platinum" plan in July 2021.)

74.     Since Mr. Ambrose signed up, SiriusXM has <u>never</u> emailed or mailed Mr. Ambrose a single monthly billing statement or monthly receipt. But meanwhile, SiriusXM has inundated Mr. Ambrose's email inbox with a dozen or so marketing and promotional emails each and every month. In other words, since Mr. Ambrose signed up for his music plan in August 2020, SiriusXM has sent <u>zero</u> monthly billing notices or receipts to Mr. Ambrose, while at the same time sending him <u>hundreds</u> of marketing emails promoting various features and upsells. None of these marketing emails made any mention whatsoever of the existence of the U.S. Music Royalty Fee.

75.     Mr. Ambrose did not learn of the existence of the U.S. Music Royalty Fee until March 2023.

76.     When Mr. Ambrose signed up for a SiriusXM music plan in August 2020, he was relying on SiriusXM's prominent representations regarding the monthly price of the music plan. Mr. Ambrose understood and assumed that any additional amounts beyond the $21.99

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

plan price that SiriusXM may charge him would be for legitimate taxes or government-related fees. Mr. Ambrose did not expect (and he was never told) that SiriusXM would actually charge him a so-called U.S. Music Royalty Fee on top of the advertised and quoted music plan price or that the true price of his music plan would include the 21.4% additional cost of the U.S. Music Royalty Fee. That information would have been material to him. Had he known that information he would not have been willing to pay as much for his music plan and would have acted differently.

77.     Mr. Ambrose seeks recovery of the full amounts of the U.S. Music Royalty Fees charged to him by SiriusXM.

78.     Mr. Ambrose has a legal right to rely now, and in the future, on the truthfulness and accuracy of SiriusXM's representations and advertisements regarding its music plan prices. Mr. Ambrose believes that he was given the services SiriusXM promised him—just not at the price SiriusXM promised and advertised to him.

79.     Mr. Ambrose remains a SiriusXM subscriber as of this filing. Mr. Ambrose desires to sign up for SiriusXM music plans in the future. However, Mr. Ambrose wants to be confident that the advertised and quoted price for SiriusXM's music plans is the true and full price for the plan (i.e., that it includes all applicable discretionary monthly service charges such as the U.S. Music Royalty Fee). And, if SiriusXM introduces any new or invented discretionary monthly service charge (like it did with the U.S. Music Royalty Fee), Mr. Ambrose wants to be confident that SiriusXM will include the amount of that service charge in the advertised and quoted music plan price. Mr. Ambrose will be harmed if, in the future, he is left to guess as to whether SiriusXM's representations are accurate and whether there are omissions of material facts regarding the music plans being advertised and represented to him.

**Plaintiff Ayana Stevenson**

80.     Plaintiff Ayana Stevenson is, and at all relevant times has been, a citizen and resident of the city of Hercules, in Contra Costa County, California.

81.     In mid 2022, Ms. Stevenson purchased a used automobile that was equipped with a SiriusXM satellite radio, but which did not come with a free trial subscription.

- 23 -

Whenever Ms. Stevenson would switch her car audio system to the satellite radio, she would hear ads from SiriusXM giving a phone number she should call to activate her radio and purchase a subscription.

82.     In June 2022, Ms. Stevenson called the phone number from the SiriusXM radio ads and spoke to a SiriusXM agent to learn about SiriusXM's music plans and prices. The agent quoted her a specific price of $17.99 for the Music & Entertainment plan. The agent did not disclose to Ms. Stevenson that SiriusXM would actually charge an additional 21.4% more for the plan than the quoted $17.99 price, in the form of the U.S. Music Royalty Fee.

83.     Relying on the representations of the SiriusXM agent, Ms. Stevenson gave her debit card information to the agent and purchased the music plan subscription.

84.     Soon thereafter, Ms. Stevenson noticed on her bank statement that SiriusXM had charged her $21.84 for the first month of her music plan. On or around July 12, 2022, Ms. Stevenson called SiriusXM to try to save money on her music plan. The SiriusXM agent she spoke to said she could save money by switching to a cheaper plan that the agent promised her would cost $16.99 per month. The agent did not disclose to Ms. Stevenson that SiriusXM would actually charge an additional 21.4% more for the plan than the quoted $16.99 price, in the form of the U.S. Music Royalty Fee.

85.     After switching to the new music plan, Ms. Stevenson soon discovered that it was missing several of her favorite channels that had been included in her prior plan. On or around July 30, 2022, Ms. Stevenson called SiriusXM again to switch to a different plan that included the channels she wanted. The SiriusXM agent she spoke to recommended she sign up for the Platinum plan, at a quoted price of $22.99 per month. The agent did not disclose to Ms. Stevenson that SiriusXM would actually charge an additional 21.4% more for the plan than the quoted $22.99 price, in the form of the U.S. Music Royalty Fee.

86.     Each month thereafter, SiriusXM silently and automatically charged Ms. Stevenson's debit card, without giving her any email or mail notice whatsoever of the upcoming monthly charges and without ever emailing or mailing her a single monthly billing statement or receipt.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

87.     At some point after signing up for the $22.99 Platinum plan, Ms. Stevenson saw on her bank statement that SiriusXM was charging her $27.91 per month for the plan. Ms. Stevenson did not understand why she was being charged $27.91 per month rather than the $22.99 per month that she recalled she had been quoted and promised. Ms. Stevenson called SiriusXM and asked the agent she spoke to why she was being charged so much. The agent told her the extra amount charged was due to "fees and taxes."

88.     Ms. Stevenson assumed that by "fees and taxes," the agent was referring to legitimate taxes and government-related fees. Ms. Stevenson had no idea that the "fees and taxes" amount was not actually comprised of any taxes or legitimate government-related fees whatsoever. Ms. Stevenson had no idea that in fact 100% of the purported "fees and taxes" amount was to pay for SiriusXM's invented U.S. Music Royalty Fee—which was just a way for SiriusXM to charge more for the music plan itself while disguising it as a government-related pass-through charge.

89.     Since Ms. Stevenson signed up, SiriusXM has <u>never</u> emailed or mailed her a single monthly billing statement or monthly billing receipt. But meanwhile, SiriusXM has inundated Ms. Stevenson's email inbox with a dozen or so marketing and promotional emails each and every month. None of these marketing emails made any mention whatsoever of the existence of the U.S. Music Royalty Fee.

90.     Ms. Stevenson did not learn of the existence of the U.S. Music Royalty Fee until February 2023.

91.     Each time that Ms. Stevenson signed up for a SiriusXM music plan, she was relying on SiriusXM's explicit representations regarding the monthly price of the music plan. Ms. Stevenson did not expect (and she was never told) that SiriusXM would actually charge her a so-called U.S. Music Royalty Fee on top of the advertised and quoted music plan price or that the true price of the music plan would include the 21.4% additional cost of the U.S. Music Royalty Fee. That information would have been material to her. Had she known that information she would not have been willing to pay as much for her music plans and would have acted differently.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

92.     Ms. Stevenson seeks recovery of the full amounts of the U.S. Music Royalty Fees charged to her by SiriusXM.

93.     Ms. Stevenson has a legal right to rely now, and in the future, on the truthfulness and accuracy of SiriusXM's representations and advertisements regarding its music plan prices. Ms. Stevenson believes that she was given the services SiriusXM promised her—just not at the prices SiriusXM promised and advertised to her.

94.     Ms. Stevenson remains a SiriusXM subscriber as of this filing. Ms. Stevenson desires to sign up for SiriusXM music plans in the future. However, Ms. Stevenson wants to be confident that the advertised and quoted price for SiriusXM's music plans is the true and full price for the plan (i.e., that it includes all applicable discretionary monthly service charges such as the U.S. Music Royalty Fee). And, if SiriusXM introduces any new or invented discretionary monthly service charge (like it did with the U.S. Music Royalty Fee), Ms. Stevenson wants to be confident that SiriusXM will include the amount of that service charge in the advertised and quoted music plan price. Ms. Stevenson will be harmed if, in the future, she is left to guess as to whether SiriusXM's representations are accurate and whether there are omissions of material facts regarding the music plans being advertised and represented to her.

## CLASS ALLEGATIONS

95.     Plaintiffs Ayana Stevenson and David Ambrose bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to California Civil Code § 1781, California Rules of Court 3.760 *et seq.* and any other applicable rules.

96.     **Class Definition**: Plaintiffs Ayana Stevenson and David Ambrose seek to represent the following Class:

> **All current and former SiriusXM subscribers in California who paid a "U.S. Music Royalty Fee" within the applicable statute of limitations.**

97.     **Online Signup Subclass Definition**: Plaintiff David Ambrose also seeks to represent the following "Online Signup" subclass:

> **All current and former SiriusXM subscribers in California who signed up for a music plan on the SiriusXM website, and who paid a "U.S. Music Royalty Fee" within the applicable statute of limitations.**

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

98.     **Telephone Signup Subclass Definition**: Plaintiff Ayana Stevenson also seeks to represent the following "Telephone Signup" subclass:

> **All current and former SiriusXM subscribers in California who signed up for a music plan on the phone with a SiriusXM agent, and who paid a "U.S. Music Royalty Fee" within the applicable statute of limitations.**

99.     **Automatic Renewal Subclass Definition**: Plaintiff David Ambrose also seeks to represent the following "Automatic Renewal" subclass:

> **All current and former SiriusXM subscribers in California who signed up for a multi-month free trial or for a multi-month discounted promotional rate, and who were not provided a notice of the expiration of the free trial or promotional rate between 3 and 21 days prior to said expiration and prior to being charged a higher rate for the music plan.**

100.    Regarding the Class, the Online Signup Subclass, and the Telephone Signup Subclass (but excluding the Automatic Renewal Subclass), this Court should apply the **discovery rule** to extend any applicable limitations period and corresponding class period to the date on which SiriusXM first began charging the U.S. Music Royalty Fee—which, based on the investigation of Plaintiffs' counsel, is in 2009. The nature of SiriusXM's misconduct was non-obvious and intentionally concealed from its subscribers. As a result of SiriusXM's intentional misconduct, omissions, and affirmative misrepresentations throughout the customer lifecycle, neither Plaintiffs nor the members of the Class and Subclasses could have, through the use of reasonable diligence, learned of the accrual of their claims against SiriusXM at an earlier time.

101.    Specifically excluded from the Class and Subclasses are SirusXM and any entities in which SiriusXM has a controlling interest, SiriusXM's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

102.    *Numerosity.* The number of members of the Class and Subclasses (the "Class members") are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery. However, based on information and belief, the Class and Subclasses comprises millions of individuals. The exact number and identities of Class members are contained in SiriusXM's records and can be easily

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

ascertained from those records.

103.   ***Commonality and Predominance.*** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a.      Whether SiriusXM employed a uniform policy of charging the U.S. Music Royalty Fee to Plaintiffs and Class members who subscribed to its music plans;

b.      Whether SiriusXM's policy and practice of advertising and quoting the prices of its music plans without the amount of the U.S. Music Royalty Fee is false, deceptive, or misleading;

c.      Why did SiriusXM not include the amounts of the U.S. Music Royalty Fee in the advertised and quoted prices for its music plans;

d.      Whether SiriusXM adequately and accurately disclosed the existence of the U.S. Music Royalty Fee, its nature or basis, or its amount, to Plaintiffs and Class members;

e.      What is the nature or purpose of the U.S. Music Royalty Fee;

f.      Why did SiriusXM put "U.S." in the beginning of the name of the U.S. Music Royalty Fee;

g.      Whether the true prices of SiriusXM's music plans, and of the U.S. Music Royalty Fee, are material information, such that a reasonable consumer would find that information important to the consumer's purchase decision;

h.      Whether SiriusXM has a policy and practice of signing up subscribers for automatic renewal and sending a single initial sign-up email, but never thereafter sending the subscriber any ongoing billing notices, bills or receipts;

i.      Whether SiriusXM has a policy of intentionally preventing subscribers from noticing that they are being charged the Fee, including, but not limited to, SiriusXM's practice of signing up subscribers for automatic renewal but then never thereafter sending the subscriber any ongoing billing notices, bills or receipts;

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

j.      Whether SiriusXM's practice of not providing a notice of the pending expiration of a consumer's multi-month free trial or promotional rate prior to charging that customer the higher rate is deceptive and/or is intended by SiriusXM to reduce the likelihood of subscribers noticing that they are being charged a higher price;

k.      Whether SiriusXM has a policy and practice of falsely telling subscribers who notice and inquire about the U.S. Music Royalty Fee that it is a government-related fee and/or that it is outside of SiriusXM's control;

l.      Whether SiriusXM's misrepresentations and misconduct alleged herein violate California Civil Code § 1750 *et seq.* (CLRA), California Business & Professions Code § 17500 *et seq.* (FAL), and California Business & Professions Code § 17200 *et seq.* (UCL);

m.      Whether SiriusXM's conduct alleged herein violates California Business & Professions Code § 17600 *et seq.* (California's automatic renewal law); and

n.      Whether SiriusXM has violated the covenant of good faith and fair dealing, implied in its contracts with Plaintiffs and Class members, by imposing the U.S. Music Royalty Fee in the manner alleged herein, and by its deceptive automatic renewal practices as alleged herein.

104.    ***Typicality***. Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of SiriusXM's standard practices and schemes, bring the same claims, and face the same potential defenses.

105.    ***Adequacy***. Plaintiffs and their counsel will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests and are committed to representing the best interests of the Class members. Moreover, Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

106.    ***Superiority.*** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek

CLASS ACTION COMPLAINT

- 29 -

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

individual redress for SiriusXM's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

107.    By its conduct and omissions alleged herein, SiriusXM has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class and Subclasses as a whole.

108.    SiriusXM is primarily engaged in the business of selling services. Each cause of action brought by Plaintiffs against SiriusXM in this Complaint arises from and is limited to statements or conduct by SiriusXM that consist of representations of fact about SiriusXM's business operations or services that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, SiriusXM's services or the statements are or were made in the course of delivering SiriusXM's services. Each cause of action brought by Plaintiffs against SiriusXM in this Complaint arises from and is limited to statements or conduct by SiriusXM for which the intended audience is an actual or potential customer or subscriber, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer or subscriber.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750 *et seq.***

109.    Plaintiffs Ayana Stevenson and David Ambrose reallege and incorporate by reference all paragraphs previously alleged herein.

110.    Each Plaintiff brings this claim in his or her individual capacity, in his or her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class and Subclasses.

111.    Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

112.    Plaintiffs and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

113.    SiriusXM's music plans are "services," as defined by Cal. Civ. Code § 1761(b).

114.    The purchase of a SiriusXM music plan by Plaintiffs and Class members is a "transaction," as defined by Cal. Civ. Code § 1761(e).

115.    Plaintiffs and Class members purchased SiriusXM's music plans for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

116.    Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in Contra Costa County. Plaintiffs' declarations establishing that this Court is a proper venue for this action are attached hereto as **Exhibit A.**

117.    By its conduct and omissions alleged herein, SiriusXM has committed unlawful methods, acts or practices, including without limitation by:

a.      Misrepresenting the prices of SiriusXM's music plans and concealing the true prices of its music plans;

b.      Misrepresenting the prices of SiriusXM's music plans by advertising or quoting prices that did not include the U.S. Music Royalty Fee;

c.      Failing to disclose or adequately disclose the existence, nature, and amount of the U.S. Music Royalty Fee when consumers signed up for SiriusXM's music plans;

d.      Failing to ever adequately or accurately disclose the existence and nature of the U.S. Music Royalty Fee to consumers or its subscribers; and

e.      Misrepresenting the nature of the U.S. Music Royalty Fee, including by representing or indicating that it was a tax or government-related charge, and by telling subscribers who discovered and inquired about the Fee that it was a government-related fee and/or was outside of SiriusXM's control.

118.    The unlawful methods, acts or practices alleged herein to have been undertaken by SiriusXM were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by SiriusXM did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

---

CLASS ACTION COMPLAINT

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

119.    SiriusXM's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

      a.    SiriusXM represented that its music plans had characteristics that they did not have. (Cal. Civ. Code § 1770(a)(5));

      b.    SiriusXM advertised its music plans with an intent not to sell them as advertised. (Cal. Civ. Code § 1770(a)(9));

      c.    SiriusXM misrepresented that its music plans were supplied in accordance with previous representations when they were not. (Cal. Civ. Code § 1770(a)(16)); and

      d.    SiriusXM inserted unconscionable provisions in its consumer agreements. (Cal. Civ. Code § 1770(a)(19))

120.    With respect to any omissions, SiriusXM at all relevant times had a duty to disclose the information in question because, inter alia: (a) SiriusXM had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) SiriusXM concealed material information from Plaintiffs and Class members; and (c) SiriusXM made partial representations, including regarding the supposed price of its music plans, which were false and misleading absent the omitted information.

121.    SiriusXM's misrepresentations deceive and have a tendency to deceive the general public.

122.    SiriusXM's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

123.    Plaintiffs and Class members reasonably relied on SiriusXM's material misrepresentations, and would not have purchased, or would have paid less money for, SiriusXM's music plans had they known the truth.

124.    By its conduct and omissions alleged herein, SiriusXM caused the demand for its music plans to be artificially increased and caused all subscribers of those plans, including Plaintiffs and Class members, to pay premiums to SiriusXM.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

125.     As a direct and proximate result of SiriusXM's violations of the CLRA, Plaintiffs and Class members have been harmed and lost money or property in the amount of the U.S. Music Royalty Fees they have been charged and paid.

126.     SiriusXM's conduct has caused substantial injury to Plaintiffs, Class members, and the general public.

127.     Plaintiffs lack an adequate remedy at law to prevent SiriusXM's continued unlawful practices. Plaintiffs will be harmed in the future by their inability to rely on the truthfulness and accuracy of SiriusXM's representations and advertisements regarding its music plan prices. Plaintiffs desire and intend to sign up for different SiriusXM music plans and/or to sign up for another promotional period or contract in the future. However, Plaintiffs want to be confident that the advertised and quoted price for SiriusXM's music plans is the true and full price for the plan (i.e., that it includes all applicable discretionary service charges). And, if SiriusXM introduces any new discretionary service charge, Plaintiffs want to be confident that SiriusXM will include the amount of that service charge in the advertised and quoted music plan price. Plaintiffs will be harmed if, in the future, they are left to guess as to whether SiriusXM's representations are accurate and whether there are omissions of material facts regarding the music plans being advertised and represented to them.

128.     Monetary damages are not an adequate remedy at law for <u>future</u> harm for the following reasons, without limitation: <u>First</u>, damages are not an adequate remedy for future harm because they will not prevent SiriusXM from continuing its unlawful conduct. <u>Second</u>, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know: (1) what music plan(s) Plaintiffs may want or need in the future; (2) what SiriusXM's future U.S. Music Royalty Fees will be (given that the Fee is calculated as a percentage of the quoted music plan price, and given that SiriusXM has increased the percentage rate of the Fee over time); or (3) how many months Plaintiffs would continue to subscribe to SiriusXM's services. Because these factors are unknown, damages are impossible to calculate and cannot be awarded for future harm. <u>Third</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy)

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by the general public, Class members, and Plaintiffs for future violations of the law by SiriusXM.

129.    Plaintiffs, on behalf of themselves and as private attorneys general, seek **public injunctive relief** under the CLRA to protect the general public from SiriusXM's false advertisements, misrepresentations, and omissions. Specifically, Plaintiffs seek a permanent public injunction against SiriusXM under the CLRA as follows: **(1)** enjoin SiriusXM from falsely advertising the prices of its music plans to members of the general public; **(2)** enjoin SiriusXM from advertising or quoting a music plan price to members of the general public if that price does not include all applicable discretionary service charges (such as the U.S. Music Royalty Fee); and **(3)** enjoin SiriusXM from representing to members of the public that its own discretionary service charges (such as the U.S. Music Royalty Fee) are taxes, government or regulatory fees, charges imposed to recover costs billed to SiriusXM by the government, or charges over which SiriusXM has no control.

130.    SiriusXM's misconduct which affects the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by SiriusXM absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining SiriusXM from committing these practices which harm the general public.

131.    In accordance with California Civil Code § 1782(a), Plaintiffs, through counsel, served SiriusXM with notice of its CLRA violations by USPS certified mail, return receipt requested on March 22, 2023, which was received by SiriusXM on March 24, 2023. Additionally, the notice was emailed to SiriusXM's counsel on March 23, 2023.

132.    The notice was sent on behalf of a group of clients including Plaintiffs Ayana Stevenson and David Ambrose, and the notice stated it was also for the benefit of a class of similarly situated California consumers. The letter demanded that SiriusXM: "(1) return all the money that SiriusXM California subscribers have paid in U.S. Music Royalty Fees; and (2) stop advertising and promising to consumers a particular price for its music plans, when in fact SiriusXM intends to charge a higher price by charging additional discretionary service charges

CLASS ACTION COMPLAINT

- 34 -

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    such as the U.S. Music Royalty Fee."

2       133.    As of April 13, 2023, SiriusXM has not offered or given any correction or

3    remedy whatsoever to Plaintiffs for SiriusXM's CLRA violations. SiriusXM has also not

4    undertaken or provided the actions or corrections required by California Civil Code § 1782(c)

5    for alleged class-wide CLRA violations.

6       134.    If SiriusXM fails to provide appropriate relief for its CLRA violations by

7    Monday, April 24, 2023 (i.e., 30 days from its receipt of Plaintiffs' mailed notification letter),

8    Plaintiffs will amend or seek leave to amend this Complaint to pray for compensatory and

9    punitive damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys'

10   fees and costs.

11                      **SECOND CAUSE OF ACTION**
                **Violation of California's False Advertising Law ("FAL")**
12              **California Business & Professions Code § 17500 *et seq.***

13       135.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged

14   herein.

15       136.    Each Plaintiff brings this claim in his or her individual capacity, in his or her

16   capacity as a private attorney general seeking the imposition of public injunctive relief, and as a

17   representative of the Class and Subclasses.

18       137.    By its conduct and omissions alleged herein, SiriusXM has committed acts of

19   untrue or misleading advertising, as defined by and in violation of California Business &

20   Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL").

21   These acts include but are not limited to:

22            a.    Misrepresenting the prices of SiriusXM's music plans and concealing the

23   true prices of its music plans in its advertising;

24            b.    Misrepresenting the prices of SiriusXM's music plans by advertising or

25   quoting prices that did not include the U.S. Music Royalty Fee;

26            c.    Failing to disclose or adequately disclose the existence, amount, or

27   nature of the U.S. Music Royalty Fee; and

28            d.    Misrepresenting to members of the public that SiriusXM's own

---

CLASS ACTION COMPLAINT

                        - 35 -

discretionary service charges are taxes, government or regulatory fees, charges imposed to recover costs billed to SiriusXM by the government, or charges over which SiriusXM has no control.

138.    With respect to omissions, SiriusXM at all relevant times had a duty to disclose the information in question because, inter alia: (a) SiriusXM had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) SiriusXM concealed material information from Plaintiffs and Class members; and (c) SiriusXM made partial representations, including regarding the supposed prices of its music plans, which were false or misleading absent the omitted information.

139.    SiriusXM committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or SiriusXM, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

140.    SiriusXM's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

141.    SiriusXM's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

142.    Plaintiffs and Class members reasonably relied on SiriusXM's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, SiriusXM's music plans had they known the truth.

143.    By its conduct and omissions alleged herein, SiriusXM received more money from Plaintiffs and Class members than it should have received, in the form of U.S. Music Royalty Fees, and that money is subject to restitution.

144.    By its conduct and omissions alleged herein, SiriusXM caused the demand for its music plans to be artificially increased and caused all subscribers of those plans, including Plaintiffs and Class members, to pay premiums to SiriusXM.

145.    As a direct and proximate result of SiriusXM's violations of the FAL, Plaintiffs and Class members lost money.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

146.    Plaintiffs lacks an adequate remedy at law to prevent SiriusXM's continued unlawful practices, as previously discussed in Paragraph 127 above.

147.    Monetary damages are not an adequate remedy at law for future harm, as previously discussed in Paragraph 128 above.

148.    Plaintiffs, on behalf of themselves and as private attorneys general, seek **public injunctive relief** under the FAL to protect the general public from SiriusXM's false advertisements, misrepresentations, and omissions. Specifically, Plaintiffs seek a permanent public injunction against SiriusXM under the FAL as follows: **(1)** enjoin SiriusXM from falsely advertising the prices of its music plans to members of the general public; **(2)** enjoin SiriusXM from advertising or quoting a music plan price to members of the general public if that price does not include all applicable discretionary service charges (such as the U.S. Music Royalty Fee); and **(3)** enjoin SiriusXM from representing to members of the public that its own discretionary service charges (such as the U.S. Music Royalty Fee) are taxes, government or regulatory fees, charges imposed to recover costs billed to SiriusXM by the government, or charges over which SiriusXM has no control.

149.    SiriusXM's misconduct which affects the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by SiriusXM absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining SiriusXM from committing these practices which harm the general public.

150.    Plaintiffs seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

### THIRD CAUSE OF ACTION
**Violation of California's Unfair Competition Law ("UCL")**
**California Business & Professions Code § 17200 *et seq*.**

151.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

152.    Each Plaintiff brings this claim in his or her individual capacity, in his or her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1    representative of the Class and Subclasses.

2        153.    California Business & Professions Code § 17200, *et seq.*, also known as

3    California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent

4    business practice.

5        154.    **"Unlawful" Prong.** SiriusXM has violated the UCL by engaging in the

6    following unlawful business acts and practices:

7            a.    Making material misrepresentations in violation of Cal. Civ. Code §§

8    1770(a)(5), (9), and (16) (the CLRA);

9            b.    Inserting unconscionable provisions in its consumer agreements, in

10   violation of Cal. Civ. Code § 1770(a)(19) (the CLRA);

11           c.    Making material misrepresentations and omissions in violation of Cal.

12   Bus. & Prof. Code § 17500 *et seq.* (the FAL);

13           d.    Failing to provide any notice of the impending expiration of a customer's

14   multi-month free trial or promotional rate prior to charging that customer the higher rate, in

15   violation of California's automatic renewal law, Cal. Bus. & Prof. Code § 17600 *et seq.*; and

16           e.    Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710.

17       155.    **"Unfair" and "Fraudulent" Prongs.** SiriusXM has violated the UCL by

18   engaging in the following unfair and fraudulent business acts and practices:

19           a.    Misrepresenting the prices of SiriusXM's music plans and concealing the

20   true prices of its music plans;

21           b.    Misrepresenting the prices of SiriusXM's music plans by advertising or

22   quoting prices that did not include the U.S. Music Royalty Fee;

23           c.    Failing to disclose the Fee—or to even mention the words "U.S. Music

24   Royalty Fee"—in **any** SiriusXM advertising, including in the fine print;

25           d.    Failing to disclose or adequately disclose the existence, nature, and

26   amount of the U.S. Music Royalty Fee when consumers signed up for SiriusXM's music plans;

27           e.    Failing to ever adequately or accurately disclose the existence and nature

28   of the U.S. Music Royalty Fee to its subscribers;

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

f.      Misrepresenting the nature of the U.S. Music Royalty Fee by calling it "Fees and Taxes." SiriusXM's sole disclaimer is that "Fees and taxes apply," but in reality zero taxes and zero other fees apply, such that the one and only purported "Fees and taxes" that is charged is the undisclosed U.S. Music Royalty Fee;

g.      Signing up customers for automatic renewal by default but never thereafter sending the customer any ongoing bills or receipts;

h.      Failing to provide any notice of the impending expiration of a customer's multi-month free trial or promotional rate prior to charging that customer the higher rate;

i.      Putting "U.S." in the beginning of the name of the U.S. Music Royalty Fee to falsely indicate to consumers that it is a government-related fee; and

j.      Falsely stating to its subscribers and to members of the public who inquire about the U.S. Music Royalty Fee that it is a government-related fee and/or is outside of SiriusXM's control.

156.    With respect to omissions, SiriusXM at all relevant times had a duty to disclose the information in question because, inter alia: (a) SiriusXM had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) SiriusXM concealed material information from Plaintiffs and Class members; and (c) SiriusXM made partial representations, including regarding the supposed prices of its music plans, which were false and misleading absent the omitted information.

157.    SiriusXM's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

158.    SiriusXM's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

159.    Plaintiffs and members of the Class reasonably relied on SiriusXM's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, SiriusXM's music plans had they known the truth.

160.    By its conduct and omissions alleged herein, SiriusXM received more money

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

from Plaintiffs and Class members than it should have received, including the U.S. Music Royalty Fees that SiriusXM charged them on top of the advertised or quoted price for the music plans, and that money is subject to restitution.

161.    By its conduct and omissions alleged herein, SiriusXM caused the demand for its music plans to be artificially increased and caused all subscribers of those plans, including Plaintiffs and Class members, to pay premiums to SiriusXM.

162.    As a direct and proximate result of SiriusXM's unlawful, unfair, and fraudulent conduct, Plaintiffs and Class members lost money.

163.    SiriusXM's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, SiriusXM's conduct is oppressive and substantially injurious to consumers. By its conduct alleged herein, SiriusXM has improperly extracted hundreds of millions of dollars from California consumers. There is no utility to SiriusXM's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by SiriusXM's conduct alleged herein.

164.    Plaintiffs lack an adequate remedy at law to prevent SiriusXM's continued unlawful practices, as previously discussed in Paragraph 127 above.

165.    Monetary damages are not an adequate remedy at law for future harm, as previously discussed in Paragraph 128 above.

166.    Plaintiffs, on behalf of themselves and as private attorneys general, seek **public injunctive relief** under the UCL to protect the general public from SiriusXM's false advertisements, misrepresentations, and omissions. Specifically, Plaintiffs seek a permanent public injunction against SiriusXM under the UCL as follows: **(1)** enjoin SiriusXM from falsely advertising the prices of its music plans to members of the general public; **(2)** enjoin SiriusXM from advertising or quoting a music plan price to members of the general public if that price does not include all applicable discretionary service charges (such as the U.S. Music Royalty Fee); and **(3)** enjoin SiriusXM from representing to members of the public that its own

CLASS ACTION COMPLAINT

- 40 -

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

discretionary service charges (such as the U.S. Music Royalty Fee) are taxes, government or regulatory fees, charges imposed to recover costs billed to SiriusXM by the government, or charges over which SiriusXM has no control.

167.    SiriusXM's misconduct which affects the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by SiriusXM absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining SiriusXM from committing these practices which harm the general public.

168.    Plaintiffs seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## FOURTH CAUSE OF ACTION
### Violation of California's Automatic Renewal Law
### California Business & Professions Code § 17600 *et seq.*

169.    Plaintiff David Ambrose realleges and incorporates by reference all paragraphs previously alleged herein.

170.    Plaintiff David Ambrose and the Automatic Renewal Subclass members are "consumers" under California Business & Professions Code § 17601(d).

171.    SiriusXM's practice of signing customers up for automatic renewal of their music plans constitutes an "automatic renewal" plan or arrangement under California Business & Professions Code § 17601(a).

172.    SiriusXM's contractual promises and representations regarding automatic renewal, as alleged herein, constitute "automatic renewal offer terms" under California Business & Professions Code §§ 17601(b) and 17601(b)(3).

173.    SiriusXM's policy and practice of not providing any notice of the impending expiration of a customer's multi-month free trial or promotional rate prior to charging that customer the higher rate violates Business & Professions Code § 17602(b).

174.    As a result of the foregoing, Plaintiff David Ambrose and each Automatic Renewal Subclass member have been injured and have lost money or property and are entitled to restitution pursuant to California Business & Professions Code § 17604.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**FIFTH CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

175.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 108 previously alleged herein.

176.     Plaintiffs allege this cause of action in the alternative.

177.     To the extent any applicable contract could be read as granting SiriusXM discretion to impose the U.S. Music Royalty Fee—which Plaintiffs do not concede—that discretion is not unlimited, but rather is limited by the covenant of good faith and fair dealing implied in every contract by California law.

178.     To the extent any applicable contract could be read as granting SiriusXM discretion to automatically renew customer music plans at higher rates—which Plaintiffs do not concede—that discretion is not unlimited, but rather is limited by the covenant of good faith and fair dealing implied in every contract by California law.

179.     SiriusXM has violated the covenant of good faith and fair dealing by its conduct alleged herein.

180.     **Imposing the U.S. Music Royalty Fee.** SiriusXM has abused any discretion it purportedly had under any applicable contract to impose the U.S. Music Royalty Fee on Plaintiffs and Class members. For example:

a.     SiriusXM imposes the U.S. Music Royalty Fee as a covert way to charge subscribers higher rates for its music plans without having to advertise such higher rates;

b.     SiriusXM does not include the amount of the U.S. Music Royalty Fee in the advertised and quoted prices for its music plans;

c.     SiriusXM fails to disclose the Fee—or to even mention the words "U.S. Music Royalty Fee"—in **any** SiriusXM advertising, including in the fine print;

d.     SiriusXM's sole disclaimer is that "Fees and taxes apply," but in reality zero taxes and zero other fees apply, such that the one and only purported "Fees and taxes" that is charged is the undisclosed U.S. Music Royalty Fee;

e.     None of SiriusXM's competitors charge any separate royalty fee above

- 42 -

and beyond the advertised music plan price, such that SiriusXM knows that reasonable consumers would not expect SiriusXM to charge the U.S. Music Royalty Fee, let alone hide it as "Fees and Taxes";

f.      To prevent subscribers from noticing they are being charged the U.S. Music Royalty Fee, SiriusXM has a policy and practice of signing up subscribers for automatic renewal by default and never thereafter sending the subscriber any ongoing bills or receipts;

g.      SiriusXM put "U.S." in the beginning of the name of the U.S. Music Royalty Fee to falsely indicate to consumers that it is a government-related fee; and

h.      SiriusXM has a policy of falsely telling customers who notice and inquire about the U.S. Music Royalty Fee that it is a government-related fee and/or that it is outside of SiriusXM's control.

181.    SiriusXM's imposition of the U.S. Music Royalty Fee defied Plaintiffs' and Class members' reasonable expectations, was objectively unreasonable, and frustrated the basic terms of the parties' agreement. SiriusXM's conduct and actions alleged herein were done in bad faith.

182.    **Automatically renewing music plans at higher rates.** SiriusXM has abused any discretion it purportedly had under any applicable contract to automatically renew Plaintiff David Ambrose and Automatic Renewal Subclass members at higher rates for their music plans after the multi-month free trial or promotional rate expired. For example:

a.      To prevent subscribers from noticing that they are being automatically renewed at a higher rate, SiriusXM has a policy and practice of signing up customers for automatic renewal by default and never thereafter sending the customer any ongoing bills or receipts;

b.      SiriusXM has a policy and practice of not providing any notice of the impending expiration of the multi-month free trial or promotional rate prior to charging the customer the higher rate, in direct violation of California's Automatic Renewal Law, Business & Professions Code §17600 *et seq.*; and

c.      SiriusXM failed to provide notice to Plaintiff Ambrose and Automatic

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Renewal Subclass of the impending expiration of their multi-month free trials or promotional rates prior to charging them the higher rates.

183.     SiriusXM's policy and practice of renewing customers at a higher rate for their music plan after the multi-month free trial or promotional rate expired without adequate notice defied Automatic Renewal Subclass members' reasonable expectations, was objectively unreasonable, and frustrated the basic terms of the parties' agreement. SiriusXM's conduct and actions alleged herein were done in bad faith.

184.     SiriusXM's conduct described herein has had the effect, and the purpose, of denying Plaintiffs and Class members the full benefit of their bargains with SiriusXM.

185.     Plaintiffs and Class members have performed all, or substantially all, of the obligations imposed on them under any applicable agreements with SiriusXM. There is no legitimate excuse or defense for SiriusXM's conduct.

186.     Any attempts by SiriusXM to defend its overcharging through reliance on supposed contractual provisions will be without merit. Any such provisions are either inapplicable or are unenforceable because they are void, illusory, lacking in mutuality, are invalid exculpatory clauses, violate public policy, are procedurally and substantively unconscionable, and are unenforceable in light of the intentional, deceptive and hidden nature of SiriusXM's misconduct, among other reasons. Any such provisions, if any, would not excuse SiriusXM's abuses of discretion or otherwise preclude Plaintiffs and Class members from recovering for breaches of the covenant of good faith and fair dealing.

187.     Plaintiffs and Class members sustained damages as a result of SiriusXM's breaches of the covenant of good faith and fair dealing.

188.     Plaintiffs and Class members seek damages in the amount of the U.S. Music Royalty Fees paid by Plaintiffs and Class members.

189.     Plaintiff David Ambrose and Automatic Renewal Subclass members also seek damages in the amount of their overpayments which resulted from SiriusXM's deceptive automatic renewal practices.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**PRAYER FOR RELIEF**

**Public Injunctive Relief:**

  A.  In order to prevent injury to the general public, Plaintiffs individually, and as private attorneys general, request that the Court enter a public injunction against SiriusXM under the CLRA, FAL, and UCL as follows:

    1.  Permanently enjoin SiriusXM from falsely advertising the prices of its music plans and from concealing the true prices of its music plans in its advertising;

    2.  Permanently enjoin SiriusXM from advertising or quoting a music plan price to members of the general public if that price does not include the amount of the U.S. Music Royalty Fee;

    3.  Permanently enjoin SiriusXM, including SiriusXM's sales agents, from representing or stating to members of the general public that the U.S. Music Royalty Fee is any of the following: (a) a tax; (b) a government or regulatory fee; (c) a charge imposed to recover costs billed to SiriusXM by federal, state or local governments; or (d) a charge over which SiriusXM has no control; and

    4.  Retain jurisdiction to monitor SiriusXM's compliance with the permanent public injunctive relief requested hereinabove.

**Individual And Class Relief:**

  B.  On behalf of themselves and the proposed Class and Subclasses (the "Class members"), Plaintiffs request that the Court order relief and enter judgment against SiriusXM as follows:

    1.  Declare that SiriusXM's arbitration clause is unconscionable and/or unenforceable;

    2.  Declare this action to be a proper class action, certify the proposed Class and Subclasses, and appoint Plaintiffs and their counsel to represent the Class and Subclasses;

    3.  Order that the discovery rule applies to extend any applicable limitations period and the corresponding class period for the Classes (excluding the Automatic Renewal Subclass) to the date on which SiriusXM first began charging the U.S. Music Royalty Fee

---

CLASS ACTION COMPLAINT

- 45 -

(which, based on the investigation of Plaintiffs' counsel, is 2009);

4.      Declare that SiriusXM's conduct alleged herein violates the CLRA, FAL, and UCL;

5.      Declare that SiriusXM's conduct alleged herein violates California's automatic renewal law (Business & Professions Code § 17600 *et seq.*);

6.      Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that SiriusXM obtained, directly or indirectly, from Plaintiffs and Class members as a result of the unlawful conduct alleged herein;

7.      Order SiriusXM to pay damages for breach of the implied covenant of good faith and fair dealing to Plaintiffs and Class members in the amount they paid in U.S. Music Royalty Fees; and

8.      Order SiriusXM to pay damages for breach of the implied covenant of good faith and fair dealing to Plaintiffs and the Automatic Renewal Subclass in the amount of their overpayments which resulted from SiriusXM's deceptive automatic renewal practices.

**Other Relief:**

C.      On behalf of themselves and the proposed Class and Subclasses, and in their capacities as private attorneys general, Plaintiffs request that the Court order relief as follows:

1.      Order SiriusXM to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

2.      Grant such other relief as this Court deems just and proper.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiffs Ayana Stevenson and David Ambrose, individually, as private attorneys

3  general to protect the general public, and as class representatives on behalf of all others

4  similarly situated, demand a trial by jury on all issues so triable.

5

6        Date: April 13, 2023.

7                                                        Presented by:

8                                                        HATTIS & LUKACS

9                                                        By: _____

10                                                       Daniel M. Hattis (SBN 232141)
                                                         Paul Karl Lukacs (SBN 197007)
11                                                       HATTIS & LUKACS
                                                         11711 SE 8th St, Ste 120
12                                                       Bellevue, WA 98005
                                                         Telephone: (425) 233-8650
13                                                       Email: dan@hattislaw.com
                                                         Email: pkl@hattislaw.com
14
                                                         Attorneys for Plaintiffs and the Proposed Class and
15                                                       Subclasses

16

17

18

19

20

21

22

23

24

25

26

27

28

---

# EXHIBIT A

DocuSign Envelope ID: F6BDAA59-5B45-4A56-893B-C4245AA3FA07

1   Daniel M. Hattis (SBN 232141)
    Paul Karl Lukacs (SBN 197007)
2   HATTIS & LUKACS
    11711 SE 8th St, Ste 120
3   Bellevue, WA 98005
    Telephone: (425) 233-8650
4   Facsimile: (425) 412-7171
    Email: dan@hattislaw.com
5   Email: pkl@hattislaw.com

6   *Attorneys for Plaintiffs*
    *and the Proposed Class*
7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                          COUNTY OF CONTRA COSTA
10                              UNLIMITED CIVIL
11

12  AYANA STEVENSON and              Case No. _____
    DAVID AMBROSE,
13  For Themselves,                  **DECLARATION OF**
    As Private Attorneys General, and **AYANA STEVENSON**
14  On Behalf Of All Others Similarly Situated, **PURSUANT TO THE CALIFORNIA**
                                     **CONSUMERS LEGAL REMEDIES**
15                                   **ACT**
                        Plaintiffs,  **(CAL. CIVIL CODE § 1780(d))**
16
    v.
17
    SIRIUS XM RADIO INC.,            **[FILED CONCURRENTLY**
18                                   **WITH COMPLAINT]**
                        Defendant.
19

20

21

22

23

24

25

26

27

28

CLRA DECLARATION OF                          **HATTIS & LUKACS**
AYANA STEVENSON                              11711 SE 8th St, Ste 120
                                            Bellevue, WA 98005
                                    T: 425.233.8650 | F: 425.412.7171
                                            www.hattislaw.com

1    I, AYANA STEVENSON, hereby declare and state as follows:

2    1.    I am over the age of 18 years, and am a plaintiff in the above-referenced civil

3    action.

4    2.    The facts contained herein are based on my personal knowledge except as to

5    facts stated upon information and belief and, as to those, I believe it to be true.

6    3.    This civil action pleads a cause of action for violation of the California

7    Consumers Legal Remedies Act ("CLRA") against Defendant Sirius XM Radio Inc.

8    ("SiriusXM" or "Defendant"). This civil action has been commenced in a county described in

9    Section 1780(d) of the California Civil Code as a proper place for the trial of the action.

10   4.    This action is being commenced in Contra Costa County, California because that

11   is a county in which Defendant is doing business. Defendant is doing business in Contra Costa

12   County by, without limitation, advertising, selling, and providing its satellite radio and

13   streaming plans in Contra Costa County.

14   5.    This action is also being commenced in Contra Costa County because I

15   subscribed to SiriusXM services when in my home in Hercules, California (which is in Contra

16   Costa County) for use in my automobile which is located in Contra Costa County, and I was

17   charged the U.S. Music Royalty Fee (which is the subject of this Complaint) in Contra Costa

18   County.

19   I declare under penalty of perjury under the laws of the State of California that the

20   foregoing is true and correct.

21   Executed in Contra Costa County, California.

22

23   Date: 2023-04-04 | 08:03:49 PDT



DocuSigned by:

232ABC48D55045A

24   AYANA STEVENSON

25

26

27

28

---

CLRA DECLARATION OF
AYANA STEVENSON

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

*Attorneys for Plaintiffs
and the Proposed Class*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF CONTRA COSTA

UNLIMITED CIVIL

AYANA STEVENSON and
DAVID AMBROSE,
For Themselves,
As Private Attorneys General, and
On Behalf Of All Others Similarly Situated,

Plaintiffs,

v.

SIRIUS XM RADIO INC.,

Defendant.

Case No. _____

**DECLARATION OF
DAVID AMBROSE
PURSUANT TO THE CALIFORNIA
CONSUMERS LEGAL REMEDIES
ACT
(CAL. CIVIL CODE § 1780(d))**

**[FILED CONCURRENTLY
WITH COMPLAINT]**

I, DAVID AMBROSE, hereby declare and state as follows:

1.      I am over the age of 18 years, and am a plaintiff in the above-referenced civil action.

2.      The facts contained herein are based on my personal knowledge except as to facts stated upon information and belief and, as to those, I believe it to be true.

3.      This civil action pleads a cause of action for violation of the California Consumers Legal Remedies Act ("CLRA") against Defendant Sirius XM Radio Inc. ("SiriusXM" or "Defendant"). This civil action has been commenced in a county described in Section 1780(d) of the California Civil Code as a proper place for the trial of the action.

4.      This action is being commenced in Contra Costa County, California because that is a county in which Defendant is doing business. Defendant is doing business in Contra Costa County by, without limitation, advertising, selling, and providing its satellite radio and streaming plans in Contra Costa County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in Orange County, California.

Date: 2023-04-03 | 21:21:53 PDT



DAVID AMBROSE

CLRA DECLARATION OF
DAVID AMBROSE

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Sirius XM Radio Inc.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Ayana Stevenson and David Ambrose, For Themselves, as Private
Attorneys General, and On Behalf Of All Others Similarly Situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Contra Costa County Superior Court | CASE NUMBER:<br>*(Número del Caso):*<br>C23-00855 |
|---|---|

75 Court Street
Martinez, CA 94553

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel M. Hattis, Esq., Hattis & Lukacs; 11711 SE 8th St, Ste 120, Bellevue, WA 98005

| DATE:<br>*(Fecha)* 4/14/2023 8:00 AM | Clerk, by<br>*(Secretario)* /s/ T. Jacobsen-Rios | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)

    ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

## Superior Court of California, Contra Costa County

CV - Martinez-Wakefield Taylor Courthouse
725 Court Street
Martinez CA  94553
925-608-1000
www.cc-courts.org



K. Bieker
Court Executive Officer

| CASE NAME: | CASE NUMBER: |
|---|---|
| AYANA STEVENSON VS. SIRIUS XM RADIO INC. | C23-00855 |

| **NOTICE OF ASSIGNMENT TO  DEPARTMENT 12 FOR CASE MANAGEMENT DETERMINATION** |
|---|

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION SHEET, AND A BLANK CASE MANAGEMENT STATEMENT ARE TO BE SERVED UPON ALL OPPOSING PARTIES, ALL PARTIES SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT.

1. THIS MATTER HAS BEEN ASSIGNED TO Department 12, Judge CHARLES S TREAT PRESIDING, FOR ALL PURPOSES; DEPARTMENT 12 IS DESIGNATED AS THE COMPLEX LITIGATION DEPARTMENT OF THE COURT AND AS SUCH (a) HEARS ALL CASES WHEREIN A DESIGNATION OF COMPLEX CASE HAS BEEN MADE AND (b) CONDUCTS HEARINGS, IN CASES THAT THIS COURT DETERMINES, ON A PRELIMINARY BASIS MAY BE COMPLEX, TO DETERMINE WHETHER THE CASE SHOULD REMAIN IN THE COMPLEX LITIGATION PROGRAM.
2. ALL COUNSEL ARE REQUIRED TO APPEAR IN DEPARTMENT 12 ON 08/11/2023 AT 8:30 AM
   a) IF THE CASE HAS BEEN DESIGNATED AS COMPLEX, AND NO COUNTER DESIGNATION HAS BEEN FILED, THE COURT WILL HOLD ITS FIRST CASE MANAGEMENT CONFERENCE AT THAT TIME.
   b) IF THE CASE HAS BEEN ASSIGNED TO DEPARTMENT 12 ON A PRELIMINARY BASIS THE COURT WILL HOLD A HEARING TO DETERMINE IF THE MATTER IS, OR IS NOT, COMPLEX. IF THE MATTER IS DETERMINED TO BE COMPLEX, THE COURT WILL THEN PROCEED WITH THE FIRST CASE MANAGEMENT CONFERENCE.
3. EACH PARTY SHALL FILE AND SERVE A CASE MANAGEMENT CONFERENCE STATEMENT FIVE (5) DAYS BEFORE THIS HEARING AND BE PREPARED TO PARTICIPATE EFFECTIVELY IN THE CONFERENCE, INCLUDING BEING THOROUGHLY FAMILIAR WITH THE CASE AND ABLE TO DISCUSS THE SUITABILITY OF THE CASE FOR PRIVATE MEDIATION, ARBITRATION OR THE USE OF A SPECIAL MASTER OR REFEREE.
4. PRIOR TO THE CONFERENCE COUNSEL FOR PLAINTIFF SHALL MEET AND CONFER WITH COUNSEL FOR EACH OTHER PARTY IN AN EFFORT TO PRECISELY DEFINE THE ISSUES IN THE CASE, DISCUSS THE POSSIBILITY OF EARLY MEDIATION, THE IDENTITIES OF POSSIBLE OTHER PARTIES, AND THEIR RESPECTIVE PLANS FOR DISCOVERY.
5. UNTIL THE TIME OF THE CONFERENCE THE FOLLOWING INTERIM ORDERS SHALL BE IN EFFECT:
   a) PLAINTIFF SHALL DILIGENTLY PROCEED IN LOCATING AND SERVING EACH AND EVERY DEFENDANT. IT IS THE COURT'S INTENTION THAT EACH PARTY BE SERVED IN SUFFICIENT TIME TO HAVE ENTERED AN APPEARANCE WITHIN THE TIME ALLOWED BY LAW AND TO ATTEND THE FIRST CONFERENCE.
   b) ALL DISCOVERY SHALL BE STAYED EXCEPTING AS ALL PARTIES TO THE ACTION MIGHT OTHERWISE STIPULATE OR THE COURT OTHERWISE ORDER.
   c) NO PARTY SHALL DESTROY ANY WRITING OR OTHER EVIDENCE IN ITS POSSESSION OR UNDER ITS CONTROL WHICH BEARS IN ANY WAY UPON THE MATTERS WHICH ARE THE SUBJECT OF THIS LITIGATION.
   d) WITHIN THE TIME FOR ANY PARTY TO FILE AN ANSWER OR DEMURRER SUCH PARTY MAY ALTERNATIVELY FILE A NOTICE OF GENERAL APPEARANCE. IN SUCH EVENT THE TIME FOR FILING OF AN ANSWER OR DEMURRER SHALL BE EXTENDED TO TWENTY (20) DAYS FOLLOWING THE FIRST CONFERENCE UNLESS THE COURT SHALL, AT THAT TIME, SET A DIFFERENT SCHEDULE.
   e) COUNSEL FOR EACH PARTY SHALL DO A CONFLICT CHECK TO DETERMINE WHETHER SUCH COUNSEL MIGHT HAVE A POSSIBLE CONFLICT OF INTEREST AS TO ANY PRESENT OR CONTEMPLATED FUTURE PARTY.

BY ORDER OF THE COURT

## Superior Court of California, Contra Costa County

CV - Martinez-Wakefield Taylor Courthouse
725 Court Street
Martinez CA  94553
925-608-1000
www.cc-courts.org



K. Bieker
Court Executive Officer

**SUPERIOR COURT OF CALIFORNIA, CONTRA COSTA COUNTY**

I DECLARE UNDER PENALTY OF PERJURY THAT I AM NOT A PARTY TO THE WITHIN ACTION OR PROCEEDING; THAT ON THE DATE BELOW INDICATED, I SERVED A COPY OF THE FOREGOING NOTICE BY DEPOSITING SAID COPY ENCLOSED IN A SEALED ENVELOPE WITH POSTAGE THEREON FULLY PREPAID IN THE UNITED STATES MAIL AT MARTINEZ, CA AS INDICATED ABOVE.

DATE:  _____4/17/2023_____

BY:   T. JACOBSEN-RIOS DEPUTY CLERK

NOTICE OF HEARING HAS BEEN PRINTED FOR THE FOLLOWING ATTORNEYS/FIRMS OR PARTIES FOR CASE NUMBER: C23-00855 ON 4/17/2023:

DANIEL M HATTIS
11711 SE 8TH ST
SUITE 120
BELLVUE WA  98005