UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYANA STEVENSON, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SIRIUS XM RADIO INC.,<br><br>    Defendant. | Case No. 23-cv-02367-WHO<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISSING CASE**<br><br>Re: Dkt. No. 17 |

Plaintiffs Ayana Stevenson, David Ambrose, and Liza Ramirez brought this action on behalf of a putative class of California Sirius XM subscribers to challenge what they describe as a "deceptive pricing scheme whereby Sirius XM falsely advertises its music plans at lower prices than it actually charges." First Amended Complaint ("FAC"), ¶ 1. Defendant Sirius XM Radio, Inc. ("Sirius XM") seeks to compel plaintiffs to arbitration pursuant to the arbitration provision in the Sirius XM Customer Agreement. Plaintiffs oppose, arguing that provisions in the Customer Agreement's "Class Action Waiver" violate California public policy, are unenforceable, and as a result trigger a "poison pill" nullifying the entire arbitration agreement. Their arguments fail because they challenge a provision of the Class Action Waiver that does not apply to them and because the Class Action Waiver does not bar them from recovering public injunctive relief in any forum. For the reasons discussed below, Sirius XM's motion to compel arbitration is GRANTED and the case is DISMISSED.[1]

---

[1] Plaintiffs request that if I grant the motion to compel the entire action should be dismissed without prejudice, so that plaintiffs may immediately appeal. I will do so pursuant to 9 U.S.C. § 16(a)(3) ("(a) An appeal may be taken from . . . (3) a final decision with respect to an arbitration

**BACKGROUND**

Plaintiffs allege that Sirius XM, a satellite radio service that broadcasts channels to more than 33 million subscribers, including 3.8 million Californians, intentionally does not disclose the "U.S. Music Royalty Fee" to its customers. *Id.* ¶ 2, 19. The fee increases the plan price by 21.4% above the advertised price for the plans; plaintiffs assert that Sirius XM prevents customers from learning about the additional charge by never sending period bills or payment receipts after initial subscription, yet nevertheless automatically renewing their subscriptions. *Id*. ¶¶ 19-20.

In order to subscribe to Sirius XM, customers must agree to the Sirius XM Customer Agreement; all plaintiffs did so when they signed up. The Customer Agreement states that disputes will generally be resolved by binding arbitration. In a boxed, bolded, all caps statement near the top of the Customer Agreement, it reads:

> ANY DISPUTE BETWEEN US MAY BE RESOLVED BY BINDING ARBITRATION ON AN INDIVIDUAL BASIS AS OUTLINED IN <u>SECTION L</u> BELOW. BY AGREEING TO THIS AGREEMENT AND BINDING ARBITRATION YOU ARE WAIVING YOUR RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY.

*See* Customer Agreement, Declaration of Diana L. Calla (Dkt. No. 17-1) ¶ 3, Ex. 1.[2] Sirius XM argues that because no plaintiffs cancelled their subscriptions within the requisite period stated in the Customer Agreement, they are bound by the terms of the agreement. Motion to Compel Arbitration ("Mot.") [Dkt. No. 17] 2:1-5; 4:21-22; 8:14-16; *see also* FAC ¶¶ 80, 97, 108.

In Section L, which is titled "Resolving Disputes," the Customer Agreement describes the process by which "[a]ny legal or equitable claim relating to the Service, the Site, your Subscription or this Agreement (a 'Claim')" shall be resolved. *Id.* § L. Initially, a customer must mail a notice of the claim to Sirius XM's General Counsel. *Id.* § L(1). A formal proceeding may not be started for at least sixty days after such written notice. *Id.*

Next, the Customer Agreement states:
> If we cannot resolve a Claim informally, including any dispute as to the validity or applicability of this arbitration clause, then the Claims shall be resolved, upon election by

that is subject to this title.").

---

[2] Sirius XM seeks to enforce the version of the Customer Agreement that was last updated on October 14, 2021. Plaintiffs do not dispute that is the version that governs their claims.

2

either party, exclusively and finally by binding arbitration. The party initiating arbitration must follow the rules and procedures of the American Arbitration Association ('AAA') in effect at the time the Claim is filed, and the parties agree that the arbitration shall be administered by the AAA.

*Id.* § L(2). It adds, the "arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act . . . and not by any state law concerning arbitration." *Id.*

Notwithstanding the provisions just discussed, customers may opt out of arbitration. They may send a timely "Opt-Out Notice" to Sirius XM. *Id.* § L(6). None of the Plaintiffs exercised that option. *See generally* FAC.

The Customer Agreement also contains a provision addressing class actions and severability, the "Class Action Waiver." Customers may not opt out of it. I quote it in full in the Discussion section, below.

Plaintiffs filed this lawsuit in California Superior Court for Contra Costa County and it was removed to this court. They are bringing suit individually and as private attorneys general seeking public injunctive relief "to protect the general public by putting an end to SiriusXM's unlawful advertising scheme." FAC ¶¶ 147, 153, 165.[3] They also seek declaratory relief and restitution on behalf of themselves and on behalf of a Class and Subclasses of California Sirius XM subscribers. *Id.* ¶¶ 10, 125.[4]

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq.* The FAA provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

---

[3] Plaintiffs sought leave to file a supplemental brief in support of their opposition to Sirius XM's motion to compel arbitration. Dkt. No. 32. They included a copy of the proposed supplemental brief. Dkt. No. 32-1. Sirius XM opposed this motion. Dkt. No. 35. The supplemental brief raised issues regarding defendant's alleged conduct in its arbitration proceedings with other consumers. Those allegations do not implicate the legal questions before me on this motion. Therefore, the motion for leave is denied.

[4] Defendant Sirius XM filed an unopposed motion to file under seal, seeking to seal personal information of Sirius XM customers. Dkt. No. 16. The motion is granted for compelling justifications shown.

1  contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). Under the FAA, a

2  district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii)

3  whether the agreement encompasses the dispute at issue." *Nguyen v. Barnes & Noble Inc.*, 763

4  F.3d 1171, 1175 (9th Cir. 2014). "To evaluate the validity of an arbitration agreement, federal

5  courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v.*

6  *Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and

7  citation omitted). A court ruling on a motion to compel arbitration reviews the evidence on the

8  same standard as for summary judgment under Rule 56. *See Navarro v. SmileDirectClub, Inc.*,

9  No. 22-CV-00095-WHO, 2022 WL 1786582, at *5 (N.D. Cal. Jun. 1, 2022).

If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## DISCUSSION

If a valid arbitration clause exists, arbitration is mandatory. *See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478 (1989). Plaintiffs do not contest that they each accepted and agreed to the Customer Agreement, and that if the Customer Agreement's arbitration clause is enforceable, then their claims would fall within the scope of the arbitration clause. Mot. 8:25-15:16.

But arbitration clauses "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (citations and quotations omitted). Plaintiffs contend that the arbitration agreement is not enforceable because of the Class Action Waiver, which states:

> 7. Class Actions and Severability: You do not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim submitted to arbitration or litigation (to the extent you elect to Opt-Out of Arbitration) ("Class Action Waiver"). A "Claim" does not include any challenge to the validity and effect of the Class Action Waiver, which must be decided by a court. There shall be no right or authority for any

4

> claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, as a private attorney general, or other Subscribers, or other persons similarly situated. The parties acknowledge and agree that under no circumstances will a class action be arbitrated.
>
> The Class Action Waiver is material and essential to the arbitration of any dispute between the parties and is non-severable from this agreement to arbitrate Claims. **If the Class Action waiver is limited, voided or cannot be enforced, then the parties' agreement to arbitrate (except for this sentence) shall be null and void**, subject to the right to appeal any limitation or invalidation of the Class Action Waiver.

Cust. Agr. § L(7)  [Dkt. No. 17, Ex. 1 at 20] (emphasis added).

Plaintiffs assert that the Class Action Waiver contains two unlawful provisions: (1) an unlawful waiver of the right to pursue class litigation in court for Sirius XM customers who choose to "opt-out" of the arbitration agreement, and (2) an unlawful waiver of the right to pursue public injunctive relief in arbitration for those who did not opt-out of arbitration. They argue that either or both provisions trigger the non-severability clause in the second paragraph, also known as the poison pill (in bold), rendering the arbitration agreement unenforceable. I will address each argument below.[5]

## I. PLAINTIFFS LACK STANDING TO CHALLENGE THE CLASS ACTION WAIVER ON BEHALF OF CONSUMERS WHO HAVE OPTED-OUT

In evaluating the validity of the arbitration agreement, I apply the California state-law principles that govern the formation of contracts. *Circuit City*, 328 F.3d at 1170. To assert a right or challenge a violation of a right under a particular provision of a contract, the individual must have been affected by or interacted with the particular provision. In *Smith, Valentino & Smith, Inc. v. Superior Court*, the California Supreme Court explained that a party seeking to set a contractual provision aside must "establish[] that enforcement of the present clause would be unreasonable" in that party's case. 17 Cal. 3d 491, 496 (1976)[6]; *see also Sanchez v. Valencia*

---

[5] The arbitration agreement states that all "Claims" must be arbitrated, Cust. Agr., § L(2) (first paragraph), but a challenge to an aspect or portion of the Class Action Waiver is specifically carved out as not a "Claim." Id., § L(7). Accordingly, I and not the arbitrator have the authority to determine whether the Class Action Waiver is valid.

[6] While *Smith, Valentino & Smith* considered forum selection clauses, the Supreme Court has recognized arbitration agreements as "a specialized kind of forum-selection clause" that controls

5

*Holding Co., LLC*, 61 Cal. 4th 899, 920 (2015) (arbitration provision cannot be held unconscionable without a showing that it would be unconscionable as to the party asserting unconscionability).

Courts in this District follow that limitation on standing and routinely decline to reach the legality of contractual provisions that do not apply to the plaintiff in front of them. *See e.g. Tan v. Grubhub*, 15-CV-05128-JSC, 2016 WL 4721439, at *6 (N.D. Cal. Jul. 19, 2016), aff'd sub nom. *Lawson v. Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021) (in determining whether common questions of law existed sufficient for class certification, the court declined to consider challenges to "the applicability or enforceability of the arbitration and class action waiver provisions" as plaintiff lacked standing to "challenge those provisions himself because, in light of his decision to opt out, they do not apply to him"); *see also Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1003 (N.D. Cal. Sep. 32, 2011) (because plaintiff "has not shown how the modification clause [in the arbitration agreement] has been applied to her," she "thus lacks standing to challenge the provision"); *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1362165-WA, at *5 (N.D. Cal. Apr. 11, 2011) ("[p]laintiff does not have standing to challenge the change-in-terms provision, because it has never been applied to her[.]"); *Wright v. Sirius XM Radio Inc.*, 2017 WL 4676589, at *8 (C.D. Cal. Jun. 1, 2017) (a provision allowing Sirius XM to sue for non-payment did not apply to the plaintiff, so plaintiff could not challenge the arbitration agreement on the basis of that provision). These cases are on point. Plaintiffs lack standing to assert claims about provisions of arbitration agreements that do not apply to them.

Plaintiffs counter that unconscionability should be assessed prospectively, from the time of contracting. This would give plaintiffs here – who did not opt out – standing to challenge the class action waiver in court on behalf of those who opted out. Oppo. 20-21. They contend that because the poison pill "does not contain language stating that it can only be enforced by a plaintiff who is subject to one of the arbitration agreement's unlawful clauses," that omission means that they can enforce the poison pill themselves. *Id.*

---

forum but also the procedures applied to resolve disputes. *See, e.g., Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1919, reh'g denied, 143 S. Ct. 60 (2022).

1	But the authority that plaintiffs cite does not support their position that any party may

2	challenge any provision in a contract, even if that provision does not apply to them. For example,

3	in *American Software, Inc. v. Ali*, the court held that a contract could not become unconscionable

4	over time, not that the effect of a contract should be assessed "prospectively." 46 Cal. App. 4th

5	1386, 1392 (1996). *MacClelland v. Cellco Partnership* is also inapposite. 609 F. Supp. 3d 1024

6	(N.D. Cal. Jul. 1, 2022) (Chen, J.), *appeal pending*, No. 22-16020 (9th Cir.). There, Judge Chen

7	considered whether an arbitration clause in a Verizon customer agreement was substantively

8	unconscionable. *Id*. at 1036. The defendant wanted to limit the unconscionability analysis to only

9	the plaintiffs in the case, rather than considering the agreement's effect on several thousand other

10	Verizon customers to whom the provision also applied and were clients of the plaintiffs' law firm

11	but had not yet filed suit. *Id.* at 1041. Judge Chen found that it would be inappropriate to limit the

12	unconscionability analysis to only those plaintiffs who had proven that the provision harmed them.

13	*Id.* This is not the same thing as allowing a plaintiff to challenge provisions of a contract that does

14	not apply to her. *MacClelland* does not stand for the principle that a contract may be assessed for

15	unconscionability concerning individuals who are not subject to its terms.

16	At oral argument, plaintiffs relied on *Subcontracting Concepts (CT) LLC v. De Melo* as

17	support for their position that California courts determine unconscionability based on provisions

18	that do not apply to the signing party. 34 Cal. App. 5th 201, 205 (2019). In *CT LLC*, the

19	respondent signed an employment contract that included a mandatory arbitration provision. He

20	subsequently filed a wage claim with the Labor Commissioner and the company moved to compel

21	arbitration. In determining substantive unconscionability, the court considered the arbitration

22	agreement's waiver of the right to pursue claims under the Labor Code Private Attorneys General

23	Act of 2004 (§ 2698 *et seq*., "PAGA"), even though plaintiff did not assert PAGA claims in his

24	administrative action. *Id*. at 212. The court explained why:

25	> The question in determining unconscionability, however, does not involve comparing the terms of the arbitration clause with the nonarbitration claims respondent is pursuing. Rather, under Civil Code section 1670.5, subdivision (a), we review the arbitration clause for substantive unconscionability at the time the agreement was made.

28	*Id*.

*CT LLC* is a different case. The respondent there did not attempt to bring a PAGA claim. But if he had tried, the arbitration agreement would have barred him from doing so in violation of then-applicable California Supreme Court law. In contrast, here plaintiffs did not opt-out of arbitration; they will never be subject to a provision of the Customer Agreement that only applies to Sirius XM customers who did.

In short, plaintiffs cannot trigger the poison pill based on a provision that does not and cannot apply to them.

## II. THE CLASS ACTION WAIVER DOES NOT PROHIBIT PUBLIC INJUNCTIVE RELIEF

In *McGill v. Citibank, N.A.*, the California Supreme Court held that an arbitration agreement that prohibited plaintiffs from seeking a public injunction was invalid because it "seriously compromise[d] the public purposes [the laws] were intended to serve." 2 Cal. 5th 945, 962 (2017); *see also Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 831 (9th Cir. 2019) ("the FAA does not preempt the *McGill* rule"). Plaintiffs argue that the Class Action Waiver's prohibition of claims seeking public injunctive relief violates public policy and is invalid, triggering the poison pill. I disagree.

### A. *McGill* and Public Injunctive Relief

Among the statutory remedies provided by the UCL, CLRA, and FAL is "public injunctive relief, i.e., injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal. 5th at 951, 956; *see also Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 4961802, at *8 (N.D. Cal. Oct. 15, 2018). Plaintiffs' complaint includes a request for such relief in the claims for false advertising under the CLRA, FAL, and UCL. *See* Counts I to III, FAC ¶¶ 127-185.

Under California law, a dispute resolution provision must allow a claimant to seek the remedy of public injunctive relief from either a court or an arbitrator. *McGill*, 2 Cal. 5th at 952. Plaintiffs argue that the Class Action Waiver violates the *McGill* rule by preventing them from seeking public injunctive relief from either a court or an arbitrator. Oppo. 9:25-28; 10:1-2. They are not satisfied by Sirius XM's concession that the arbitrator can award public injunctive relief.

8

*See* Defendants' Reply ("Repl.") [Dkt. No. 28] 11:4-9. They contend that the Class Action Waiver fails the three-part analysis that I laid out in *Brown v. Madison Reed, Inc.* to determine whether *McGill* has been violated.[7] They ask that I recognize this failure and respond by limiting or otherwise holding the Class Action Waiver to be unenforceable, triggering the poison pill and freeing plaintiffs from their agreement to arbitrate.

### B. The Court Determines Whether Public Injunctive Relief is Prohibited

Before I address that issue, I must decide whether I have the authority to do so. Sirius XM argues that the general delegation clause in § 2 of the Customer Agreement delegates it to the arbitrator. The plaintiffs oppose, relying on the exception to the broad delegation provision within § 7 that allows a court to determine the scope and validity of the Class Action Waiver provision.

I agree with the plaintiffs. Section 7 of the Arbitration Agreement, titled "Class Actions and Severability," contains an exception to Section 2's more general delegation provision. That provision specifically allows the court to determine a "challenge to the validity and effect of the Class Action Waiver." That is exactly what plaintiffs are challenging here. Sirius XM attempts to avoid the more specific exception by arguing that the "Class Action Waiver" is limited to the first sentence of Section 7 and does not encompass the remainder of Section 7. Repl. 6-8. But that interpretation is not persuasive, given: (1) the title of Section 7 ("Class Actions and Severability") and (2) the discussion through both paragraphs of Section 7 describing the prohibition on "class actions" in the first and third sentences of the first paragraph and outlining the materiality of "The Class Action Waiver" and the poison pill provision in the first and second sentences of the second paragraph.

The whole of Section 7 discusses the Class Action Waiver, confers on the court the ability to hear challenges to the validity and effect of the Waiver, and describes what happens if a court determines that the scope of the Waiver is limited, voided or cannot be enforced. I have authority

---

[7] The analysis in question asks (1) whether the claims carry public injunctive remedies that fall within the scope of *McGill*, (2) whether the arbitration agreement prohibits the claimant from seeking a public injunction in any forum and therefore is invalid under *McGill*, and (3) whether the entire arbitration agreement is null and void because a "poison pill" provision in the agreement has been triggered as a result of the claimant seeking public injunctive relief. *See Brown v. Madison Reed*, 2021 WL 3861457-WHO (N.D. Cal. Aug 30, 2021).

1  to determine whether Section 7 prohibits public injunctive relief and therefore is invalid.

### C. Whether Public Injunctive Relief is Precluded

Turning to the substance of the plaintiffs' challenge to the scope of the Class Action Waiver, I conclude that the Class Action Waiver does not preclude an arbitrator granting "public injunctive relief" in arbitration. Therefore, the poison pill is not triggered and this matter must proceed in arbitration.

To constitute public injunctive relief, the requested relief must "by and large" benefit the general public. *McGill*, 2 Cal. 5th at 955. Public injunctive relief does not include relief from which there is "no real prospective benefit to the public at large from the relief sought." *Kilgore v. Keybank, N.A.*, 718 F.3d 1052, 1061 (9th Cir. 2013) (en banc). "Merely declaring that a claim seeks a public injunction … is not sufficient to bring that claim within the bounds of the rule set forth in *McGill*." *Blair v. Rent-A-Ctr., Inc.*, No. C 17-02335 WHA, 2017 WL 4805577, at *2 (N.D. Cal. Oct. 25, 2017), aff'd in part, appeal dismissed in part, 928 F.3d 819 (9th Cir. 2019).

Here, plaintiffs are clearly seeking public injunctive relief, despite Sirius XM's contention to the contrary. Plaintiffs are bringing this lawsuit individually and as private attorneys general seeking public injunctive relief "to protect the general public by putting an end to SiriusXM's unlawful advertising scheme." FAC ¶¶ 147, 153, 165. They allege that SiriusXM has violated the CLRA, FAL, and California's UCL by making false and misleading statements of fact concerning price reductions that "deceive and have a tendency to deceive the general public," and that defendants conduct has "caused substantial injury to Plaintiffs, Class members, and the general public." FAC ¶¶ 127-144. They seek permanent public injunction against SiriusXM under all three statutes. *Id.* ¶¶ 144-185. These requests for relief mirror the requests plaintiffs made in *McGill*, which the California Supreme Court understood as requests for public injunctive relief. Plaintiffs pass the first prong of the analysis that I followed in *Brown*.

The next prong is whether the Class Action Waiver prohibits plaintiffs from seeking public injunctive relief in arbitration, as plaintiffs contend. The Class Action Waiver says that "there will be no right for any claims to be arbitrated on a class action basis or on bases involving claims brought in purported representative capacity on behalf of the general public, as a private attorney

10

1   general, or other Subscribers, or other persons similarly situated." Customer Agreement § 7 (the

2   Class Action Waiver). Sirius XM argues that under these terms, the plaintiffs may still pursue

3   public injunctive relief in connection with the arbitration of each plaintiff's individual claims and

4   note that nothing in the Class Action Waiver or the Customer Agreement more generally

5   forecloses public injunctive relief. Repl. 12:13-19. It argues that the Ninth Circuit decision

6   *DiCarlo v. MoneyLion, Inc.* reached a similar conclusion, and that case controls here. 988 F.3d

7   1148 (9th Cir. 2021). I agree.

8         In *DiCarlo*, the court understood *McGill* to mean that litigants bringing "individual

9   lawsuits" could seek "public injunctive relief" "'on [their] own behalf,'" not just "'on behalf of the

10  general public.'" *Dicarlo*, 988 F.3d at 1156 (quoting *McGill*, 2 Cal. 5th at 959). This means that

11  litigants, like plaintiffs here, are "free to seek public injunctive relief" in private arbitration

12  without acting as private attorneys general (conduct that would be barred under the terms of the

13  Class Action Waiver). *Id.*

14        Plaintiffs contend that I should not follow *DiCarlo* and instead follow *Jack v. Ring, LLC*, a

15  California Court of Appeal decision that disagreed with *DiCarlo* and held that an arbitration

16  agreement that barred the arbitration of PAGA claims unlawfully foreclosed public injunctive

17  relief. 91 Cal. App. 5th 1186 (2023). I will follow *DiCarlo*. Fundamentally, I am bound by Ninth

18  Circuit precedent interpreting California law until "the California Supreme Court resolves the

19  issue in a contrary way." *See Citizens of Humanity, LLC v. LAB sarl*, 2013 WL 12129393, at *17

20  (C.D. Cal. Apr. 22, 2013) (collecting cases). The Ninth Circuit has held that litigants are free to

21  seek public injunctive relief in private arbitration without acting as private attorneys general. *See*

22  *DiCarlo*, 988 F.3d at 1156. That is controlling.

23        Moreover, *Jack* is readily distinguishable. It involved an arbitration agreement with

24  different, more limiting language than the Sirius XM Customer Agreement or the agreement at

25  issue in *DiCarlo*. In *Jack,* the agreement limited public injunctive relief in arbitration to awards

26  "only in favor of the individual party seeking relief and only to the extent necessary to provide

27  relief warranted by that party's individual claim." *Jack*, 91 Cal. App. 5th at 1205. That language

28  precluded broader "public injunctive relief." *Id*. at 1206. There is no language in the Sirius XM

11

agreement limiting relief only to the individual or only to the extent necessary to provide relief warranted by an individual claim.[8]

The Sirius XM's Customer Agreement and Class Action Waiver does not prevent plaintiffs from seeking public injunctive relief in "any forum"; they may seek public injunctive relief in arbitration (as Sirius XM has conceded). The poison pill is not triggered, and plaintiffs must proceed to arbitration.

# CONCLUSION

For the foregoing reasons, Sirius XM's motion to compel arbitration is GRANTED. This case is DISMISSED.

**IT IS SO ORDERED.**

Dated: November 9, 2023



William H. Orrick
United States District Judge

---

[8] My opinion in *Brown v. Madison Reed, Inc.*, is consistent. There, interpreting language more similar to *Jack*, where the arbitrator was limited to awarding "injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim," the agreement was invalid under *McGill* because it did not allow the plaintiff to seek public injunctive relief in arbitration. *Brown*, at *8.